John W. SELLERS *v.* STATE of Arkansas

CR 87-198                                    749 S.W.2d 669

Supreme Court of Arkansas
Opinion delivered May 16, 1988
[Rehearing denied June 13, 1988.]

*Thomas E. Brown* and *Arthur L. Allen*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, John W. Sellers, was convicted of capital felony murder and sentenced to life imprisonment without parole. He confessed his participation in the crime after his arrest. He contends his statement should have been suppressed because it was taken while he was in custody and after he had requested but not been furnished counsel. The original information charged that Sellers participated in robbery and burglary in furtherance of which William Byrd was murdered. The information was amended to remove the robbery charge. Apparently the state planned to seek the death penalty and wished to use pecuniary gain as an aggravating circumstance in accordance with Ark. Code Ann. § 5-4-604(6) (1987), but avoid application of *Collins* v. *Lockhart*, 754 F.2d 258 (8th Cir. 1985), *cert. denied*, 106 S. Ct. 546 (1985), in which it was held that one convicted of an offense of which pecuniary gain was an element could not have that same element used against him as an aggravating circumstance in determining applicability of the death penalty. *Cf. O'Rourke* v. *State*, 295 Ark. 57, 746 S.W.2d 53 (1988), in which we discussed *Lowenfield* v. *Phelps*, ___ U.S. ___, 108 S. Ct. 546 (1988), and its effect on *Collins* v. *Lockhart, supra*. The jury was not allowed to consider robbery as the offense underlying the burglary but was instructed it could find Sellers guilty of capital murder if it was committed to facilitate a burglary, the underlying purpose of which was to commit assault and battery.

While we find Sellers' statement was admissible because he waived his right to counsel and was not coerced, we must agree with Sellers' argument that the murder was not done in further-

ance of assault and battery on the victim. Therefore the conviction must be reversed.

William Byrd was an elderly man who lived alone and was known to carry large sums of money on his person. According to Sellers' statement, he and Sam Angle and Donald McDougald had been drinking and decided to rob Mr. Byrd. McDougald procured an axe handle, and they went to Byrd's house late at night. Sellers' "job" was to knock Mr. Byrd out with his fist, and they would then take the money. Although Sellers professed their plan was only that he would hit Mr. Byrd with his fist, he knew McDougald had procured the axe handle. Other evidence showed that Mr. Byrd was killed in a brutal beating with a blunt instrument. Evidence of a statement of McDougald was admitted in which he accused Sellers of hitting Byrd "some more" while McDougald was holding Byrd's mouth to keep him quiet.

Sellers was arrested in Las Vegas, Nevada. Sheriff Gambill of Bradley County had travelled there to apprehend Sellers. After Nevada officers had arrested Sellers and brought him to the Las Vegas police station, Sheriff Gambill interviewed him. He informed Sellers of his rights, including the right to have counsel present, and Sellers said he would prefer not to talk until he had consulted counsel. The sheriff terminated the interview at that point and left the room after telling Sellers he did not want to violate any of Sellers' rights. Detective Remlinger of the Las Vegas Police Department remained in the room with Sellers and was completing routine booking documents when Sellers asked him, "What is going on?" According to Remlinger's testimony he then told Sellers that the sheriff "must know something" because he had come all the way out there to get him. He told Sellers that his friends were in jail and that is how it became known that he was in Las Vegas. Remlinger disputed Sellers' testimony that he told Sellers it would go easier on him if he made a statement. After this conversation between Sellers and Remlinger, Sellers asked Remlinger to have the sheriff return to the room because he wanted to talk to him. The sheriff returned, and Sellers made a statement, the transcription of which contains these words: "I have been advised of my rights and signed them. I have expressed to you that I want to make a statement to you."

## 1. The information

Capital murder is defined in Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1987) to include causing the death of any person while committing, among other felonies, robbery or burglary "under circumstances manifesting extreme indifference to the value of human life." Burglary is described in Ark. Code Ann. § 5-39-201(a) (1987) as follows: "A person commits burglary if he enters or remains unlawfully in an occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment."

Sellers contends that by declining to permit the jury to consider robbery as the underlying "offense punishable by imprisonment" and limiting them to consideration of the assault and battery, the court's instruction has run afoul of our decision in *Parker* v. *State*, 292 Ark. 421, 731 S.W.2d 756 (1987), in which we held that one could not be convicted of capital murder where the underlying felony was burglary if the intent of the perpetrator, upon entering the dwelling, was to commit the murder. We wrote:

> For the phrase "in the course of and in furtherance of the felony" to have any meaning, the burglary must have an independent objective which the murder facilitates. In this instance, the burglary and murder have the same objective. That objective, the intent to kill, is what makes the underlying act of entry into the home a burglary. The burglary was actually no more than one step toward the commission of the murder and was not to facilitate the murder.

The state argues that this case is distinguishable from the *Parker* case because Sellers' intent upon entering Mr. Byrd's home was to assault and batter him rather than to murder him, thus there was an objective of the burglary, independent of the murder, as our decision in the *Parker* case requires. Sellers argues that the assault and battery were merged with the killing and thus cannot be considered to be independent of it, citing *People* v. *Wilson*, 82 Cal. Rptr. 494, 462 P.2d 22 (1970), in which it was held that, "a burglary based on intent to assault with a deadly weapon is included in fact within a charge of murder, and cannot support a felony-murder instruction." 462 P.2d at 29. The only response

made by the state to the citation of the *Wilson* case is that the California Supreme Court refused to apply the same rationale in *People* v. *Burton*, 99 Cal. Rptr. 1, 491 P.2d 793 (1971). In the *Burton* case the court held that aggravated robbery did not merge with the murder. Obviously aggravated robbery involves robbery which is an offense independent of the use of deadly force and independent of the ensuing homicide, and that is what the court held.

■ While we can appreciate the state's argument that intent to commit assault and battery differs from intent to commit murder, we cannot find a way to say that the murder facilitated the burglary if the assault and battery were the underlying offenses. We cannot say that the murder facilitated the assault and battery as it was the very culmination of them. It was, therefore, error to have permitted the jury to find Sellers guilty of capital murder on the basis that it was committed in the course of burglary because the jury was not allowed to consider the robbery or any purpose for the entry of Mr. Byrd's home independent of the acts which resulted in his death.

### 2. The statement

We address this point for guidance in the event of a retrial. Sellers contends that the comments of Detective Remlinger, in response to his question, "What is going on?" after Sheriff Gambill left the interrogation room violated the requirement of *Edwards* v. *Arizona*, 451 U.S. 477 (1981), that questioning cease after the right to counsel is invoked, and amounted to coercion.

While Sellers' statement did not state specifically that he waived his right to counsel, it seems quite clear that he was completely aware of it and yet chose to make a statement in which he specifically said he wished to talk to Sheriff Gambill. The sheriff had previously complied with *Edwards* v. *Arizona, supra*, by leaving the interrogation room after stating he did not wish to violate any of Sellers' rights. Remlinger's remarks were in response to Sellers' question. It is not contended that Remlinger resumed the interrogation; rather, the contention is that by telling Sellers that the sheriff must know something and that Sellers' friends were in jail Remlinger coerced Sellers into foregoing his right to counsel and making a statement.

■■ In determining the voluntariness of a statement, we consider the totality of the circumstances in which it is made. *Smith* v. *State*, 292 Ark. 162, 729 S.W.2d 5 (1987); Given the strong evidence that Sellers knew of his right to remain silent and to have counsel present and yet chose to discuss the case, we find the statement was voluntarily given. Remlinger's remarks might have been construed to mean that Sellers had better talk because his accomplices had implicated him, but that is only conjecture, and in the circumstances presented here we cannot hold that Remlinger's conduct was coercive.

Reversed and remanded.

HICKMAN and GLAZE, JJ., concur.

TOM GLAZE, Justice, concurring. I concur. I agree with the majority but write to be sure that the majority's reference to our recent holding in *O'Rourke* v. *State*, 295 Ark. 57, 746 S.W.2d 53 (1988), does not go unnoticed. The case of *Collins* v. *Lockhart*, 754 F.2d 258 (8th Cir. 1985), has been troublesome in murder trials where the death penalty has been sought — as was the situation in the instant case. As noted in the majority opinion, *Collins* held that a person convicted of an offense of which pecuniary gain was an element could not have that same element used against him as an aggravating circumstance in determining the applicability of the death penalty. In other words, under *Collins*, an element of the underlying offense of murder could not also be used at the penalty stage to show an aggravating circumstance. The Supreme Court, in *Lowenfield* v. *Phelps*, ___ U.S. ___, 108 S. Ct. 546 (1988), held contrary to the *Collins* decision. We compared and analyzed those two holdings in *O'Rourke*, so it is unnecessary for me to repeat that analysis here except to emphasize that part of *Lowenfield* that holds, "the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm." The *Lowenfield* and *O'Rourke* decisions remove the "double-counting" issue raised in the *Collins* holding and thus prevent the type of difficulties faced by the prosecutor in this case.

HICKMAN, J., joins in this concurrence.