**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Vincent Michael LOONSFOOT,**
**Defendant–Appellant.**

Nos. 89–1309, 89–2042.

United States Court of Appeals,
Sixth Circuit.

Argued March 8, 1990.
Decided May 25, 1990.

Thomas O. Martin (argued), Office of the U.S. Atty., Grand Rapids, Mich., for plaintiff-appellee.

Mark P. Stevens (argued), Marquette, Mich., for defendant-appellant.

Before MARTIN and BOGGS, Circuit Judges; and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

In this appeal we are asked to determine whether under Michigan law the merger doctrine requires a reduction of a first-degree felony-murder conviction to second-degree murder when the underlying felony is burglary with the intent to commit assault. We hold that it does not. We are also called upon to examine whether the government's mid-trial disclosure of an exculpatory psychological diagnosis violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1968). We conclude that there was no error because the evidence was not suppressed by the prosecution.

## I. Facts

Defendant-appellant Vincent Michael Loonsfoot is an American Indian with a history of drug and alcohol abuse and closed head injuries. On June 13, 1988, appellant drove to Escanaba, Michigan, looking for his estranged wife. Unable to find her, he hid his van in some woods and drank beer. Later that day, he took his rifle and some ammunition and walked to his brother-in-law's house, which is on an Indian reservation. He hid in the woods across the road from the house until it was dark. He then broke into the empty house and waited for the family to return. He looked for evidence that his wife had been at the house, but found none. He then got into his brother-in-law's gun cabinet, took out a shotgun and a rifle, fired both weapons and laid them on the kitchen table.

When the family returned, appellant's brother-in-law entered the house first. Appellant asked where his wife was and got no response. Appellant shot him with the shotgun. Appellant dropped the shotgun and picked up the rifle. He summarily shot his sister-in-law and two nieces. All four shooting victims died. Appellant abducted a third niece, who took him to where his wife was staying. After abducting his wife and spending ten days in the woods with her, appellant surrendered to the police. Appellant was charged under federal law controlling major crimes in Indian Country with four counts of murder, kidnapping, use of a firearm during commission of a violent crime, and being a felon in possession of a firearm. Appellant did not deny the foregoing events, but put on a defense of diminished capacity. Appellant was convicted on all counts and sentenced to life imprisonment on the murder counts.[1] He now appeals.

## II. Merger doctrine

■ Appellant was convicted of first-degree murder in Indian Country under 18 U.S.C. §§ 1111 & 1153.[2] Section 1111(a) provides

"Murder is the unlawful killing of a human being with malice aforethought. Every murder ... committed in the perpetration of, or attempt to perpetrate ... burglary ... is murder in the first degree."

The only basis upon which the district court found that appellant committed first-degree murder was that the killings took place during a burglary. In Michigan, a burglary is the forcible entry of a dwelling

---

1. Appellant was sentenced under the Sentencing Guidelines. He argues that the Guidelines unconstitutionally violate procedural due process by restricting the sentencing judge's discretion. This argument was rejected by this court in *United States v. Allen*, 873 F.2d 963 (6th Cir. 1989), and accordingly is rejected here.

2. Appellant also argues that he was denied due process and equal protection of the law because he was tried under federal law, while a non-Indian would have been tried under more beneficial state law. We will not address this argument except to note that the Supreme Court squarely rejected it in *United States v. Antelope*, 430 U.S. 641, 647, 97 S.Ct. 1395, 1399, 51 L.Ed.2d 701 (1977).

house of another, in the nighttime, with the intent to commit a felony therein. *Cole v. People,* 37 Mich. 544, 548 (1877). Appellant notes that the felonious intent underlying the burglary was assault. The homicides resulted from assaults. Therefore, appellant argues, the burglary merges into the murders and precludes prosecution for felony-murder.[3] Two jurisdictions have defined the felony-murder merger doctrine in this way, but several others have rejected this argument. No federal court has published an opinion on point. We must determine how Michigan courts would resolve this issue.

Only Arkansas and California have held that the felony-murder doctrine is inapplicable when the underlying felony was committed with the same intent as the murder. *Sellers v. State,* 295 Ark. 489, 490–92, 749 S.W.2d 669, 670 (1988); *People v. Wilson,* 1 Cal.3d 431, 441, 82 Cal.Rptr. 494, 500, 462 P.2d 22, 28–29 (1969) (en banc). The *Wilson* court, noting that "the purpose of the felony-murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit," concluded that "[w]here a person enters a building with an intent to assault his victim with a deadly weapon, he is not deterred by the felony-murder rule. That doctrine can serve its purpose only when applied to a felony independent of the homicide." 1 Cal.3d at 440, 82 Cal.Rptr. at 500, 462 P.2d at 28.

Other courts have rejected this approach. In the leading case of *People v. Miller,* 32 N.Y.2d 157, 297 N.E.2d 85, 344 N.Y.S.2d 342 (1973), the Court of Appeals of New York held that a burglary based on the crime of assault could properly serve as the predicate for a felony-murder conviction. *Id.* at 159–61, 297 N.E.2d at 87–88, 344 N.Y.S.2d at 345–46. After considering whether felony-murder predicated on burglary based on intent to assault was consistent with the purpose of the felony-mur-

der rule, the court declined to extend the merger doctrine. The court stated:

It should be apparent that the Legislature, in including burglary as one of the enumerated felonies as a basis for felony murder, recognized that persons within domiciles are in greater peril from those entering the domicile with criminal intent, than persons on the street who are being subjected to the same criminal intent. Thus, the burglary statutes prescribe greater punishment for a criminal act committed within the domicile than for the same act committed on the street. Where, as here, the criminal act underlying the burglary is an assault with a dangerous weapon, the likelihood that the assault will culminate in a homicide is significantly increased by the situs of the assault. When the assault takes place within the domicile, the victim may be more likely to resist the assault; the victim is also less likely to be able to avoid the consequences of the assault, since his paths of retreat and escape may be barred or severely restricted by furniture, walls and other obstructions incidental to buildings. Further, it is also more likely that when the assault occurs in the victim's domicile, there will be present family or close friends who will come to the victim's aid and be killed.

*Id.* at 160–61, 297 N.E.2d at 87, 344 N.Y.S.2d at 345–46 (footnote omitted). *Accord, State v. Tillman,* 750 P.2d 546, 571 (Utah 1987); *Smith v. State,* 499 So.2d 750, 754 (Miss.1986); *Finke v. State,* 56 Md.App. 450, 480–82, 468 A.2d 353, 369 (1983), *cert. denied,* 299 Md. 425, 474 A.2d 218, *cert. denied sub nom. Finke v. Maryland,* 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984); *Kirby v. State,* 649 P.2d 963, 970 n. 17 (Alaska Ct.App.1982); *State v. Reams,* 292 Or. 1, 11–13, 636 P.2d 913, 919 (1981) (in banc); *State v. Foy,* 224 Kan. 558, 566–68, 582 P.2d 281, 289 (1978); *Blango v. United States,* 373 A.2d 885, 888 (D.C.

---

**3.** The government to some extent confuses the instant inquiry with the broader matter of double jeopardy in the prosecution of lesser included offenses. This is not the issue here, for there is no question that the burglary and the murder are two distinct offenses, each requiring proof of a fact which the other does not, as mandated by *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

1977); *State v. Miller*, 110 Ariz. 489, 491, 520 P.2d 1113, 1115 (1974).

In *People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304 (1980), the Supreme Court of Michigan abrogated the common-law felony-murder rule, which had punished as a murder any killing done during the perpetration of a felony, regardless of mental state. *Id.* at 727, 299 N.W.2d at 326. In discussing the effect of its ruling, however, the court stated:

> The prosecution will still be able to prove first-degree murder without proof of premeditation when a homicide is committed with malice, as we have defined it, and the perpetration or attempted perpetration of an enumerated felony is established. Hence, our first-degree murder statute continues to elevate to first-degree murder a *murder* which is committed in the perpetration or attempted perpetration of one of the enumerated felonies.

*Id.* at 730, 299 N.W.2d at 327. Michigan and federal law are therefore in agreement that homicide committed with malice in the perpetration of a felony can be punished as first-degree murder. Appellant suggests that *Aaron* indicates Michigan's agreement with the California approach to the merger doctrine. We disagree. The court in *Aaron* explicitly recognizes that the punishment for murder can be enhanced by the felony-murder rule as occurred in this case. We conclude that the New York approach to the merger doctrine is more consistent with the purpose of the felony-murder doctrine, for the reasons stated in *Miller, supra;* therefore, we hold that the merger doctrine does not preclude a conviction of first-degree felony-murder predicated on burglary in cases in which the felonious intent for the burglary is to commit assault.

### III. Disclosure of diagnosis

■ Appellant argues that he was prejudiced by the tardiness of the prosecution's mid-trial revelation of a schizophrenia diagnosis. On June 24, 1988, appellant turned himself in to the Michigan State Police. He was incarcerated in the Marquette County jail and indicted July 6, 1988.

While in custody on July 20, 1988, appellant filed a notice of insanity defense. The United States Magistrate ordered Dr. Elizabeth Fodor, appellant's psychologist, to evaluate him from August 5 to August 8, 1988. Following this evaluation, appellant was ordered to be transported to the Federal Medical Center at Springfield, Missouri, for an evaluation by a government expert. En route to Springfield, appellant was temporarily placed in the Federal Correctional Institution in Milan, Michigan. At Milan, a Dr. Yaroch examined appellant and placed two "consultation sheets" in his medical records. One sheet, dated August 15, 1988, records a provisional diagnosis of "acute psychosis—type unknown." The second sheet, dated August 29, 1988, records a provisional diagnosis of "chronic/acute schizophrenia." Although these sheets were placed in appellant's medical record and followed him to Springfield, they were not furnished to the government attorneys when they requested appellant's medical records. Consequently, those records were not included when the government responded to appellant's request to produce documents. During his stay in Springfield from September 8 to October 26, 1988, defendant was evaluated for insanity at the time of the offense by two government experts. The diagnosis was of "schizoaffective disorder, depressive type," but not schizophrenia. Appellant returned to be examined by Dr. Fodor and a second expert, Dr. Robert Moore.

The trial commenced December 5, 1988. Dr. Moore was called as an expert witness for appellant at trial; like the government's experts, he diagnosed appellant to have suffered from affective disorder but did not diagnose schizophrenia. Dr. Fodor was not called as a witness and her report was not released. On or about December 7, 1988, the government experts arrived and brought their files, including the two documents dated August 15 and August 29. This was the first opportunity at which the United States attorneys had access to those materials. When the government was examining one of the experts as a rebuttal witness on December 9, 1988, de-

fense counsel was permitted to review the documents prior to cross-examination, and in fact used them in cross-examination. Defense counsel made no objection alleging surprise, nor did they request additional time to alter the defense in light of the new material.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1968), the Court held, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–97. Here, the prosecution did not suppress the evidence, for it did not have access to it until the trial was underway. Once received, the information was timely turned over to defense counsel, who in fact utilized it in their cross-examination of the government's medical expert. These circumstances, particularly in a bench trial, do not add up to a *Brady* violation, because the prosecution did not suppress any evidence that was in its possession and defense had sufficient opportunity to react to the evidence. Appellant places particular importance on these diagnoses because they occurred earlier than those of the experts who testified and prior to appellant taking anti-psychotic medications which may have altered his mental state. While this is not the determinative issue here, we note in this regard that Dr. Fodor examined appellant even earlier than Dr. Yaroch, and Dr. Fodor's reports were fully available for appellant's use at trial.

For the reasons stated above, appellant's conviction is affirmed.