Toby Patrick CRAIG *v.* STATE of Arkansas

CA CR 98-187 14 S.W.3d 893

Court of Appeals of Arkansas
Divisions II, III, and IV
Opinion delivered April 19, 2000

*Honey & Honey, P.A.*, by: *Charles L. "Chuck" Honey* and *Marsha Basinger*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Mac Golden*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. A Nevada County Circuit Court jury convicted Toby Patrick Craig of murder in the first degree concerning the beating death of Jake McKinnon, and Craig was sentenced to forty years' imprisonment in the Arkansas Department of Correction. Craig has appealed that conviction and asserts: (1) that the conviction is not supported by

substantial evidence that he purposely caused McKinnon's death; (2) that the trial judge erred by not granting his motion to dismiss; (3) that the trial court erred by not allowing him to present evidence of self-defense; (4) that the trial court erred by allowing cumulative and prejudicial pictures of the homicide victim and booking photographs of Craig into evidence; and (5) that the prosecution made an improper "Golden Rule" closing argument, otherwise made improper closing arguments, and failed to disclose exculpatory evidence that was only discovered after trial. We hold that the trial court committed reversible error when it denied appellant's motion to dismiss the felony-murder charge because the appellant did not cause McKinnon's death in the course of committing an independent felony. Therefore, we are compelled to reverse and remand for new trial. However, we hold that the trial court committed no error when it denied appellant's attempts to present evidence of self-defense. Finally, we hold that appellant's failure to abstract the photographs which he contends were cumulative and prejudicial precludes review of that alleged error, and that appellant's allegation that the prosecutor made prejudicial closing arguments is procedurally barred because appellant's counsel failed to obtain a ruling on his objection.

Jake McKinnon died on November 9, 1996, in Nevada County, Arkansas, after suffering multiple blunt-force injuries including four fractured ribs, a fracture of his skull, and a brain injury, according to the testimony of Dr. Charles Paul Kokes, an associate medical examiner with the Arkansas Crime Laboratory. Appellant and McKinnon had engaged in a protracted dispute about unpaid dues that appellant owed a hunting club. McKinnon had apparently been instrumental in appellant's dismissal from the club because of the unpaid dues, and appellant had reported McKinnon to a game warden for possession of game killed out of season. On November 9, 1996 (the first day of the gun deer season that year), appellant, Johnny Cason, and Keith Buchheit "went looking for" McKinnon so that appellant, according to his testimony, could "talk to him" and "get everything straight." They found McKinnon alone in his truck beside a deer stand in Nevada County with his hunting rifle across his lap. After McKinnon asked appellant what he was doing there, appellant reached into the truck and struck McKinnon in the face, causing him to bleed.

Appellant and his friends then drove to the end of the dead-end road, turned around, and headed back toward a highway. Before reaching the highway, they encountered McKinnon's truck blocking the road. McKinnon grabbed his gun and walked to the back of his truck. Appellant then exited his truck with Cason's shotgun and told McKinnon that he "just wanted to talk." Appellant, Cason, and Buchheit then disarmed McKinnon, and Cason chased McKinnon's hunting companion, Shane Henry, into the woods and disarmed him. Shane Henry testified that when he and Cason returned to McKinnnon's truck after Cason had overtaken and disarmed him (Henry), appellant and Buchheit had McKinnon on the ground and were beating him. According to Henry's trial testimony, McKinnon was not fighting back at all, and the only thing McKinnon said was, "Shane, they're killing me." Henry escaped the scene and ran from the woods to seek help.

Appellant testified at trial that he and his friends struck McKinnon in the head and torso, that Cason and Buchheit kicked McKinnon in the ribs and head, that McKinnon was sitting upright and talking when they left him after the incident, and that he (appellant) only meant to give McKinnon a "butt whipping." Henry managed to catch a ride to a hunting campsite and obtain help. When Henry and the help returned to the scene where appellant and his friends had attacked McKinnon, they found him dead. Autopsy photographs vividly portrayed the injuries that the medical examiner testified resulted from the beating that McKinnon suffered, especially on his face and head.

## I.

First, appellant argues that there was no substantial evidence that he purposely committed the murder of Jake McKinnon. However, we decline to address that contention because the trial court committed prejudicial error by denying appellant's motion to dismiss the first-degree felony-murder charge.

Appellant, along with his associates, Cason and Buchheit, was charged with first-degree murder under alternative theories as follows:

> [T]he said defendant ... did wilfully, unlawfully, and feloniously ... commit or attempt to commit a felony, being 5-13-201 Battery in

the First Degree, 5-13-202 Battery in the Second Degree and/or 5-13-204 Aggravated Assault, and in the course of and in the furtherance of the felony or in immediate flight therefrom, cause the death of Jake H. McKinnon under circumstances manifesting extreme indifference to value of human life; AND/OR, with the purpose of causing the death of Jake H. McKinnon, cause the death of Jake H. McKinnon, against the peace and dignity of the State of Arkansas.

Appellant's attorney filed a written motion to dismiss charges in conjunction with a motion for a directed verdict during the course of the trial. Both motions asserted that there was no underlying felony upon which the felony-murder charge could rest. The motions were renewed at the close of the evidence, but were denied as the following excerpted exchange between the trial court and appellant's counsel indicates:

THE COURT: On your motion to dismiss charge of First Degree Murder, the Court finds that the motion will be denied and State may proceed on the First Degree Murder charge. There have been lengthy arguments in this case. I understand the contentions on both sides, but it is clear to the Court that the intent of the law is a person to be charged as is charged in this case and proceed to the jury on the issue of Murder in the First Degree. For your motion —

MR. HONEY (*appellant's counsel*): Judge, before you leave that may I inquire of the Court? Could I get the Court to make two separate rulings on that? Will you tell me whether or not they [the State] can proceed under Paragraph 1 or Paragraph 2 [Ark. Code Ann. § 5-10-102]?

THE COURT: Well, they can proceed because of the fact that actually there is an either/or here. There is a proper question in this case as to whether or not the battery that was committed and whether or not the individuals intended only to commit a battery and in fact committed a battery to such an extent that it resulted in death, or there is a question of whether or not that during the commission of this battery their intent changed.

MR. HONEY: Judge, that of course is all under Paragraph 2.

THE COURT: Well, the intent in change and they intended at that point in time to kill the victim.

MR. HONEY: Well, Paragraph 1, which is during the commission of a felony. How would the Court rule on that?

THE COURT: I would rule that these are separate instances. That a battery can be separate from the murder in this situation and the set of facts we have before the Court. That is your point, that you can't separate it. I say that you can separate it.

Throughout the trial and consistent with the alternative theories under which appellant was charged, the State contended that aggravated assault and battery constituted the underlying felonies which warranted the felony-murder prosecution. During opening statement, counsel for the State addressed the jury as follows:

Now under the First Degree Murder statute there are several different provisions listed A,B,C, and D, where if you do either one of those acts then you have committed the offense of First Degree Murder. In this case Mr. Craig and his accomplices are charged in the alternative as to two of those manners. What the State must prove — the first offense or the first method of proving First Degree Murder is we would have to prove that Mr. Craig acting in complicity with and accomplice to the other two [Cason and Buchheit], committed or attempted to commit a felony. It is alleged that there are three possible felonies there, any of which would suffice, Battery in the First Degree, Battery in the Second Degree, and Aggravated Assault. And at an appropriate time that's why it is so important that you listen to all the facts and details of this case, because at an appropriate time the Court will give you instructions that tell you what constitutes the offense of Battery in the First Degree, what constitutes the offense of Battery in the Second Degree, and what constitutes the offense of Aggravated Assault. There again we have charged this in the alternative that they with the purpose of committing either one of those three felonies. . . They were attempting to commit any one of those three. In the course of and in the furtherance of the felony or in immediate flight therefrom they caused the death of Jake McKinnon under circumstances manifesting extreme indifference to the value of human life. As to this first method of charging, what our burden is, we've got to come in and prove to you that they were committing a felony. Either First Degree Battery, as the Court will instruct you, Second Degree Battery, as the Court will instruct you, or Third Degree Battery. They could have been committing two of them or more than one. We've got to prove to you that Mr. Craig and his accomplices were committing at least one of these felonies on Jake McKinnon and in the course of that they killed

him under circumstances manifesting extreme indifference to the value of human life.

If you find all of that has been proven under the instructions the Court will give you, then we have proved that he has committed First Degree Murder, but in the alternative say that for one reason or the other you had a doubt about some element of First Degree Murder as so charged, there is a second charge, not a second charge, but a second method of charging and proving First Degree Murder that we have alleged in the alternative, which is the with the purpose of causing the death of Jake H. McKinnon, they caused his death.

What you are going to be looking for, the second thing, if you sit there looking at the evidence. If they had purpose of killing Jake McKinnon and they killed him, then they are guilty or Mr. Craig is guilty of First Degree Murder. But there is another thing, they can have a purpose less than a purpose to kill him. If they had a purpose of if they were actually committing one of these other three felonies I told you about. Maybe if you find that they really didn't intend to kill him, but they were committing one of these other felonies and they were doing it in a manner that manifested extreme indifference to the value of human life and they killed him or he died as a result of it, even though that might not have been their conscious purpose to kill him, under that provision he would be guilty of First Degree Murder. So it's very important that you pay real close attention to the evidence and the witnesses and keep in mind that certainly if their purpose was to find Jake McKinnon and kill him, then they have committed First Degree Murder. But if they had a purpose something less than that, just to commit one of these other felonies and they done it under the circumstances explained and he died as a result of it, even with a purpose less than killing him, Mr. Craig can be found guilty of First Degree Murder.

The State repeated this argument in its written and oral responses to appellant's motion to dismiss the charges that was raised at the close of the State's case in chief and after the defense rested its case. The State presented no rebuttal evidence. Appellant's counsel then objected to the jury being instructed as to Arkansas Model Criminal Jury Instruction 301 (lesser included offenses) consistent with the motion to dismiss the charges and for directed verdict. That objection was overruled. Appellant's counsel then requested that two interrogatories be submitted to the jury specifically focused on the elements of the felony murder aspect of the charge; that

request was denied. After the trial court instructed the jury, counsel for the State argued as follows, in pertinent part:

> Under the law in the State of Arkansas if you go out and beat the hell out of somebody or commit an assault and battery on them, even if you don't mean to kill them, the law is if you do you are guilty of First Degree Murder. He [referring to appellant] admitted it. He said when he was being questioned by the police he thought he was being questioned about an assault and battery on Jake McKinnon. Jake was dead at the time.

We agree with counsel for appellant that our supreme court's reasoning in *Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987), and subsequent cases contradicts the State's contention and the trial court's decision to deny the motion to dismiss the felony-murder charge. In *Parker v. State* the supreme court reversed and remanded two capital-felony murder convictions against William Frank Parker based on prosecutions under what was Ark. Stat. Ann. § 41-1501(1)(a), which required that a murder be committed "in the course of and in furtherance of" any of several enumerated felonies, including burglary. Parker was divorced from Pam Warren, the daughter of James Warren. On the date of the homicides, James Warren and Cindy Warren, another of his daughters, were getting into Mr. Warren's truck in front of their house when they saw Parker approaching the truck with a gun. Parker fired shots at Cindy Warren but missed her. Then he chased Mr. Warren into the house where Mr. Warren and his wife, Sandra Warren, were later found shot to death. The supreme court concluded that the killings, although obviously a form of criminal homicide, were not "in the course of and in furtherance of" a burglary as required to be capital-felony murder. Chief Justice Jack Holt, Jr., wrote the majority opinion and addressed the issue as follows:

> For the phrase "in· the course of and in furtherance of the felony" to have any meaning, the burglary must have an independent objective which the murder facilitates. In this instance, the burglary and murder have the same objective. That objective, the intent to kill, is what makes the underlying act of entry into the home a burglary. The burglary was actually no more than one step toward the commission of the murder and was not to facilitate the murder.

*Id.* at 427, 731 S.W.2d at 759.

In *Sellers v. State*, 295 Ark. 489, 749 S.W.2d 669 (1988), the supreme court reversed and remanded John Sellers's conviction for capital-felony murder in connection with the death of William Byrd, an elderly man who lived alone and who was known to carry large sums of money on his person. Sellers and an associate had been drinking and decided to rob Byrd. The associate obtained an axe handle, and the two men went to Byrd's house late at night. Although Sellers professed that their plan was for him to hit Byrd with his fist, he knew his associate had procured the axe handle. The evidence showed that Byrd had been killed in a brutal beating with a blunt instrument. Writing for the court in *Sellers*, Justice Newbern quoted from the court's opinion in *Parker, supra*, and rejected the State's argument that *Sellers* was distinguishable from *Parker* because Sellers's intent on entering Byrd's house was to assault and batter him rather than to murder him.

> While we can appreciate the state's argument that intent to commit assault and battery differs from intent to commit murder, we cannot find a way to say that the murder facilitated the burglary if the assault and battery were the underlying offenses. We cannot say that the murder facilitated the assault and battery as it was the very culmination of them. It was, therefore, error to have permitted the jury to find Sellers guilty of capital murder on the basis that it was committed in the course of burglary because the jury was not allowed to consider the robbery or any purpose for the entry of Mr. Byrd's home independent of the acts which resulted in his death.

*Id.* at 493, 749 S.W.2d at 671.

In *Allen v. State*, 310 Ark. 384, 838 S.W.2d 346 (1992), the supreme court reversed and remanded James Lee Allen's conviction for first-degree murder regarding the death of Robert Harris. Allen had been charged with premeditated and deliberate capital murder, which includes the lesser charge of purposeful first-degree murder. He had not been charged with capital-felony murder, but the trial court gave a first-degree felony murder instruction over his objection. The jury verdict did not reflect whether it had found Allen guilty of first-degree premeditated murder or first-degree felony murder. The supreme court reversed the conviction because it concluded that Allen may have been convicted of first-degree felony murder although he had never been charged with that crime. Because the felony murder charge was never filed, the court con-

cluded that it could neither remand nor dismiss it. But in view of its decision to remand the premeditated murder charge that was filed and in anticipation that the State might seek to amend the information to include a felony-murder count, the court referred to its decision in *Parker v. State, supra,* and addressed the State's contention that Allen's action in firing a pistol at the homicide victim constituted the underlying felony of aggravated assault so as to warrant the trial court's decision to issue the felony-murder jury instruction:

> The proof showed that appellant fired a pistol when he killed the victim. At trial, the State contended that firing the pistol constituted the underlying felony of aggravated assault, and on that basis the trial court gave the felony-murder instruction. That was a misconstruction of the felony-murder statute. Under the first degree felony-murder statute, "a person commits murder in the first degree if . . . he commits . . . a felony, and in the course of and in the furtherance of the felony . . . causes the death of any person . . . ." Ark. Code Ann. 5-10-102 (Supp. 1991). The assault in this case was only in the furtherance of the murder, not of some other felony. . . . In sum, under the proof, the appellant would not be guilty of felony-murder even if he were so charged.

310 Ark. at 388, 838 S.W.2d at 348.

■ The foregoing authorities lead us to conclude that the trial court committed reversible error when it denied appellant's motion to dismiss the first-degree felony-murder charge in the case before us. The proof at trial showed that appellant assaulted, beat, and kicked Jake McKinnon in furtherance of the homicide, not in furtherance of committing an independent felony. As the supreme court concluded in *Sellers,* we cannot say that appellant killed McKinnon in order to facilitate an assault or a battery. And by the same reasoning the supreme court employed to conclude that the appellant in *Allen* would not have been guilty of first-degree felony murder even had he been so charged, we must conclude that the trial court erred when it allowed the State to prosecute and the jury to convict this appellant of first-degree felony murder. Any other result would be inconsistent with our supreme court's decisions in *Parker, Sellers,* and *Allen.*

The State argues appellant is procedurally barred from attacking the trial court's denial of his motion to dismiss the first-degree felony-murder charge because he failed to proffer the interrogato-

ries he wanted to submit to the jury in place of the general verdict form that the trial court issued and because he failed to proffer a first-degree murder instruction to replace the model instruction given by the trial court. But this argument misses or ignores the crux of appellant's valid claim that the trial court erred when it denied his motion to dismiss the first-degree felony-murder charge. Appellant preserved his challenge to that error at all relevant points in the trial. He would not have bolstered his challenge by proffering a first-degree purposeful murder instruction consistent with the general verdict because the trial court had erroneously allowed the case to be tried on the alternative theories of first-degree felony murder and purposeful murder. Appellant should not have been prosecuted for felony murder; no jury instruction would cure that error, nor would it have been cured by proffering interrogatories, particularly when the trial court had denied appellant's request that the jury be given interrogatories for completing its verdict.

 We recognize how painful and difficult a second trial will be for the family of Jake McKinnon. Yet we cannot dismiss the trial court's error as harmless. As previously indicated, appellant should not have been charged with first-degree felony murder because he did not kill Jake McKinnon in the course of and in furtherance of committing or attempting to avoid apprehension for an independent felony. We cannot determine whether the jury convicted on the permissible theory of purposeful murder alone or also on the impermissible theory of first-degree felony murder. Thus, we must reverse and remand for new trial.

## II.

Appellant also contends that the trial court erred by denying his request to present evidence of self-defense. The State argues that appellant failed to preserve the issue for appellate review by his failure to make an objection to the trial court's decision, by failing to request the trial court to instruct the jury as to self-defense, and by failing to proffer a written jury instruction on self defense. Alternatively, the State argues that the evidence did not support instructing the jury as to self-defense.

We agree with the State that the evidence did not support a self-defense instruction. All the evidence, including appellant's testi-

mony at trial, showed that appellant punched McKinnon in the face without provocation or aggressive action by McKinnon. Appellant testified, "I just felt like hitting him in the mouth. He had angered me by threatening me and telling me that I had no right to be down there." The evidence shows that McKinnon did not pursue appellant following that incident. Instead, appellant and his cohorts returned to McKinnon's truck. At that point McKinnon pointed a gun at their vehicle. Appellant, Cason, and Buchheit exited the vehicle and disarmed McKinnon. McKinnon tried to punch appellant, but the appellant testified that the swing missed. Appellant, a six-feet-tall man who estimated his weight at between 205 and 210 pounds, then knocked the five-feet, nine-inches-tall McKinnon (who weighed 165 pounds) to the ground, straddled him, and began punching him about the head and body. Cason and Buchheit then began kicking McKinnon about the head and body. Shane Henry testified that when Cason brought him back to the area where appellant had begun beating McKinnon, McKinnon was on the ground, offered no resistance to the beating he was receiving from appellant and Buchheit, and said, "Shane, they're killing me." Appellant estimated that the beating lasted as long as ten minutes.

One who asserts the defense of justification of a homicide must show not only that the person killed was using deadly physical force, but that he responded with only that force which was necessary and that he could not have avoided the killing. *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996). A person is justified in using deadly physical force upon another person only if he reasonably believes that the other person was about to commit a felony involving force of violence or about to use unlawful deadly physical force and he was not the initial aggressor. *See* Ark. Code Ann. §§ 5-2-606(b)(2) and 5-2-607(a)(1)(2) (Repl. 1997). No error exists in refusing a self-defense instruction when there is no supporting evidence for the instruction. *Humphrey v. State*, 332 Ark. 398, 966 S.W.2d 213 (1998). The trial court properly denied appellant's effort to present evidence to show self-defense.

### III.

Appellant contends that the trial court erred by permitting the State to introduce autopsy photographs into evidence that depicted McKinnon's injuries and erred by admitting mug photo-

graphs of him and his co-defendants into evidence over his objection. Appellant cited no legal authority and offered no convincing argument to support his contention that the trial court erred by admitting the mug photographs of him and his co-defendants. *See Bailey v. State*, 334 Ark. 43, 972 S.W.2d 239 (1998). Further, appellant failed to abstract the autopsy photographs that he contends were cumulative.

Rule 4-2(a)(6) of the Rules of the Supreme Court and Court of Appeals provides that:

> [w]henever a map, plat, photograph, or other similar exhibit, which cannot be abstracted in words, must be examined for a clear understanding of the testimony, the appellant shall reproduce the exhibit by photography or other process and attach it to the copies of the abstract filed in the Court and served upon the opposing counsel, unless this requirement is shown to be impracticable and is waived by the Court upon motion.

Appellant did not move to have this requirement waived, and the photographs in question have not been reproduced and attached as prescribed by the rule. Thus, we do not consider appellant's arguments. *See Douthitt v. State*, 326 Ark. 794, 935 S.W.2d 241 (1996).

█ Appellant also argues that the prosecution withheld exculpatory information consisting of a tape-recorded message that McKinnon, the homicide victim, apparently left at the home of Nevada County criminal investigator Jim Westmoreland. McKinnon inquired in the message about the possibility of criminal charges being filed against Larry Overton for being a felon in possession of a firearm. According to appellant, this information was exculpatory in that it implicated Overton for having a motive to harm McKinnon. Because of our decision to reverse and remand for retrial, appellant has not been adversely affected by the withheld information.

█ Appellant finally argues that the prosecutor made an improper "Golden Rule" argument and otherwise engaged in improper closing argument couched at arousing the passion of jurors by referring to appellant and his cohorts as a "truckload of criminals." The record shows that appellant's counsel interrupted the prosecutor's closing argument but failed to obtain a ruling. There is no proper objection to the "truckload of criminals" state-

ment, merely an interruption. Thus, we do not reach the merits of appellant's contention.

Appellant's conviction is reversed and the case is hereby remanded for retrial.

PITTMAN, JENNINGS, NEAL, and MEADS, JJ., agree.

STROUD, J., and HAYS, S.J., concur.

ROAF and HART, JJ., concur in part and dissent in part.

JOHN F. STROUD, JR., Judge, concurring. I concur with the majority in reversing and remanding this case solely because we are bound to follow precedent of the Arkansas Supreme Court. Under our first-degree murder statute, a person commits murder in the first degree if, acting alone or with one or more other persons, he commits or attempts to commit a felony, and *in the course of and in the furtherance of the felony* or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-102 (Repl. 1997) (emphasis added). The emphasized language, which likewise appears in our capital-murder statute,[1] has been the subject of discussion in cases before the supreme court:

> [In] *Sellers v. State*, 295 Ark. 489, 749 S.W.2d 669 (1988), ... we cited *Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987), which held that one could not be convicted of capital murder where the underlying felony was burglary if the intent of the perpetrator, upon entering the dwelling, was to commit the murder. Quoting from *Parker*, we said:
>
>> For the phrase "in the course of and in furtherance of the felony" to have any meaning, the burglary must have an independent objective which the murder facilitates. In this instance, the burglary and murder have the same objective. That objective, the intent to kill, is what makes the underlying act of entry into the home a burglary. The burglary was actually no more than one

---

[1] In Arkansas, the capital-murder statute enumerates the included felonies (rape, kidnapping, vehicular piracy, robbery, burglary, and certain felony violations of the Uniform Controlled Substances Act, or escape in the first degree), Ark. Code Ann. § 5-10-101 (Repl. 1997), and not the first-degree murder statute, just quoted, which refers only to "a felony."

step toward the commission of the murder and was not to facilitate the murder.

> In keeping with the *Parker* rule, we reversed in *Sellers* where Sellers was charged with capital murder and burglary with an underlying charge of assault and battery. We held that we could not say the murder facilitated the burglary if the underlying offense for the burglary was assault and battery.[2]

*Allen v. State*, 296 Ark. 33, 39-40, 751 S.W.2d 347, 350 (1988). In *Allen*, the murder victim received several blows to the head, cracking his skull. The State presented evidence that Allen had burglarized the victim's home, had beaten him, and had stolen his money, watch, credit cards, guns, and vehicle. Allen confessed that he had entered the home in order to get keys and steal the car. He said that he did not intend to kill, but he confessed that he took a piece of angle iron with him in case the victim caught him or tried to shoot him. The supreme court held that the evidence supported theft as the underlying offense and object of the burglary, and that the murder resulted "in facilitating" the theft.

The problem I have with the instant case is that common sense seems to get lost in the shuffle of applying the felony-murder doctrine. For example, in the facts presented by the instant case, there seems to be more culpability, deserving a higher degree of murder charge, where the perpetrators intend to give the victim a "butt-whipping," and the victim dies as a result, than in a situation where a victim surprises the perpetrator in the middle of a theft that takes place in the victim's house, a scuffle ensues, a gun discharges, and the victim dies as a result. Yet in the first situation, according to precedent from our supreme court, the perpetrators cannot be guilty of first-degree murder, while in the second situation the perpetrator can. Perhaps an even more graphic example is presented in *Hall v. State*, 299 Ark. 209, 772 S.W.2d 317 (1989), where the supreme court affirmed a first-degree murder conviction that was based upon the underlying felony of theft by receiving. In *Hall*, the appellant killed a pedestrian while fleeing from police in a stolen vehicle.

---

[2] The *Sellers* court stated, "We cannot say that the murder facilitated the assault and battery as it was the very culmination of them." 295 Ark. at 493, 749 S.W.2d at 671.

The common-law rule was that if a person killed another in doing or attempting to do an act amounting to a felony, the killing was murder. 40 AM. JUR. 2d *Homicide* § 64 (1999). Now practically all jurisdictions have enacted felony-murder statutes, the effect of which is to impute malice or deliberation to a felon so as to make the incidental homicide murder in the first degree. *Id.* The defendant need only intend to commit the underlying felony, and no other *mens rea* is required. To me, an aggravated assault so extreme that it leads to death is the type of underlying felony for which murder in the first degree should apply. A logical reading of the first-degree felony murder statute should encompass the facts of the instant case because "[a] person commits murder in the first degree if . . . acting . . . with one (1) or more other persons, he commits a felony [in this case aggravated assault], and in the course of and in furtherance of the felony..., he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life [.]" I disagree with the supreme court's interpretation of the phrase "in furtherance of" to exclude aggravated assault as an underlying felony. Consequently, I urge the supreme court to reexamine this issue. In the absence of such action by the supreme court, I invite the legislature to examine this area of our criminal code.

I am authorized to state that Special Judge STEELE HAYS joins in this concurrence.

ANDREE LAYTON ROAF, Judge, concurring in part; dissenting in part. I agree that this case should be reversed and remanded based on the erroneous felony-murder charge, but I also believe that the trial court erred in not allowing Craig to put on evidence of self-defense.

I agree with Craig that the trial court erred in refusing to admit testimony concerning McKinnon's threats to Craig and his family the morning of the beating, which were motivated by McKinnon's belief that Craig had reported him for "poaching," and concerning McKinnon's violent nature, particularly when he was intoxicated as the autopsy report showed him to be. This evidence was clearly relevant to Craig's self-defense theory. While the majority asserts that Craig initiated the altercation by punching McKinnon in the mouth without provocation, they ignore the undisputed evidence that Craig, while attempting to exit from a dead-end road,

encountered McKinnon's truck blocking the roadway, and that McKinnon got out of his truck and pointed a rifle at Craig's truck. Further, by this time, McKinnon had picked up a companion, Shane Henry, who was also armed. Because it was McKinnon, not Craig, who was the first to threaten to use deadly physical force, I cannot agree with the majority that Craig failed to provide any evidence showing that McKinnon was the aggressor. At any rate, whether or not Craig was the aggressor was a fact question that belonged to the jury. *See Humphrey v. State*, 332 Ark. 398, 966 S.W.2d 213 (1998). Moreover, neither the medical examiner's testimony, nor that of Shane Henry, contradicts Craig's claim that McKinnon was alive when he and his companions left. Accordingly, it was a question of fact as to whether the physical force that Craig and his companions employed was necessary to effect their safety.

Finally, on review, the test is not whether Craig would have prevailed with this defense, but rather whether he presented *any evidence* tending to support its existence. *See Doles v. State*, 275 Ark. 448, 631 S.W.2d 281 (1982). Once again, neither the trial court nor this court should have usurped the role of the jury and decided this question, and I would also reverse and remand for a new trial on this point.

HART, J., joins.