Cite as 2019 Ark. App. 508

# ARKANSAS COURT OF APPEALS
DIVISION I

**No.** CR-18-1055

| | |
|---|---|
| GARY HOLMES<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** November 6, 2019<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION<br>[NO. 60CR-17-365]<br><br>HONORABLE BARRY SIMS, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Chief Judge

A Pulaski County Circuit Court jury convicted the appellant, Gary Holmes, of first-degree murder and terroristic act. It also found him guilty of employing a firearm as a means of committing both offenses. He was sentenced to forty-five years' imprisonment for first-degree murder with an additional three years' enhancement for use of a firearm to be served consecutively, and he was sentenced to five years' imprisonment for terroristic act with an additional two years' enhancement to be served concurrently. The sentences for each offense were to run concurrently. On appeal, Holmes argues that the circuit court erred in denying his motions for directed verdict. We affirm.

In the early evening hours of December 17, 2016, three-year-old AK and his little brother were back-seat passengers in a car driven by their grandmother, Kim King-Macon. King-Macon was traveling to J.C. Penney to meet her son's girlfriend. It was dark, cold, and raining extremely hard. When King-Macon was stopped at a stop sign on Warren Drive

waiting to turn onto Mabelvale Cutoff, a black Impala stopped behind her and blew its horn. King-Macon blew her horn in return, and she then saw someone exit the Impala with a gun and heard a gunshot. At that time, King-Macon did not believe the person had shot into the car. The children appeared to be fine, and she proceeded to J.C. Penney. When she reached the store and attempted to get AK out of the car, there was blood coming out of his mouth and he was lifeless. He died that evening as a result of a gunshot; the bullet had obliterated his spine, struck his lung and superior vena cava, and caused massive bleeding before it exited his chest. Holmes gave a statement to police on December 23, 2016, claiming that the gun "just went off" when he jumped out of the car.

The jury convicted Holmes of first-degree murder and terroristic act. It also found him guilty of using a firearm during the commission of both offenses. On appeal, Holmes contends that the circuit court erred in denying his motions for directed verdict. First, he argues that the evidence did not demonstrate that he shot with the purpose to cause damage to persons or property as required of a terroristic act. Second, he contends that even if the directed-verdict motion for terroristic act was properly denied, the evidence of first-degree felony murder is insufficient because it did not demonstrate that he "caused the death of AK to further the commission of the terroristic act."

In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence. *Howard v. State*, 2016 Ark. 434, 506 S.W.3d 843. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* In reviewing a sufficiency challenge, we view the evidence in

2

the light most favorable to the State, considering only evidence that supports the verdict. *Id*.

On appeal, Holmes challenges the sufficiency of the evidence as to terroristic act by stating that the evidence is in dispute. Holmes points to his contention that the "gun just went off"; that King-Macon could not identify the shooter or state that she ever saw the gun pointed at her car; and that King-Macon proceeded to J.C. Penney without calling police or realizing that her vehicle had been shot. He argues that there "was not evidence that it was [his] intent to cause damage to property when he accidentally shot in the vicinity of the vehicle that AK was a passenger [in]." The State responds that Holmes conceded at trial that the evidence supported the terroristic-act charge and that he must now be bound by this concession. We agree.

In making his motion for directed verdict, Holmes's counsel argued, "I can't in good conscience argue to this court that the death of this young child was not caused during the course of the alleged terroristic act. I won't do that. . . . In the light most favorable to the State, we could concede that that argument would sustain the directed verdict aspect of this case with regards to terroristic act." Here, Holmes's counsel conceded that the evidence was sufficient to withstand a motion for directed verdict as to the terroristic act. Generally, an attorney's statement is not evidence; however, concessions made by an attorney can bind his or her client. *Hakim v. State*, 2018 Ark. App. 579, at 3 (citing *Warren v. Frizell*, 2017 Ark. App. 129, 516 S.W.3d 756); *see also Dupwe v. Wallace*, 355 Ark. 521, 530, 140 S.W.3d 464, 470 (2004) ("In *Benton v. State*, 78 Ark. 284, 94 S.W. 688 (1906), this court stated that

'[a] party cannot, even in a criminal case, take inconsistent positions and play fast and loose with the court.' *Benton*, 78 Ark. at [293], 94 S.W. at 691.")

Even if we were to reach the sufficiency argument, it has no merit. The offense of terroristic act requires the State to prove that Holmes shot at a conveyance which was being operated or which is occupied by another person with the purpose to cause injury to another person or damage to property. Ark. Code Ann. § 5-13-310(a)(1) (Repl. 2013). Holmes argues that the evidence is insufficient that he shot at the vehicle with the intent to cause damage to property or persons. He claims that the only evidence of his intent was the statement he gave to police that the gun accidentally went off. The trier of fact, however, is not required to believe the testimony of any witness. This is especially true when the witness is the accused. *Furr v. State*, 308 Ark. 41, 44, 822 S.W.2d 380, 381 (1992) (citing *Harris v. State*, 294 Ark. 484, 743 S.W.2d 822 (1988)).

At trial, King-Macon testified that on the evening of December 17, she was driving on Warren Drive toward Mabelvale Cutoff, and noticed a black Impala with its lights on sitting to her right side on Warren Drive. When she got to the stop sign at Mabelvale Cutoff, she heard someone pressing continuously on a horn behind her. She honked her horn in return, saw someone exit the vehicle holding a gun, and heard a gunshot. King-Macon testified that she saw in her rearview mirror that the gun was pointed in the air, which was why she did not think her car had been shot and that the person was trying to scare her. She explained that it was raining hard, and she did not hear a bullet enter her car; when she looked back at her grandchildren, she did not see anything wrong with them.

4

Michelle Poole, Holmes's childhood friend whom she had known for twenty-five years, testified that she was with Holmes on the day he fired a gun at Mabelvale Cutoff and Warren Drive. She and Holmes had driven around in her black Impala most of the day. Poole testified that they had picked up Holmes's "play" brother, Fabian, who had just been in a verbal altercation outside the house where they picked him up. When he got into the Impala, Fabian had a gun, which Holmes at some point took from him. Poole testified that the gun was sitting in Holmes's lap as he drove and that Holmes was "riled up" from the altercation. She stated Holmes gets paranoid and thought people were following him as they drove around. Poole recalled Holmes indicating that a car was following him on Warren Drive, so he pulled off to the right and allowed the car to pass. The car proceeded to the stop sign as did Holmes. Poole said that the car stayed at the stop sign for a few minutes and Holmes "laid on the horn" and "jumped out and shot at the car," further explaining that the gun was pointed at the car.

Variances and discrepancies in the proof go to the weight or credibility of the evidence and are therefore matters for the fact-finder to resolve. *Starling v. State*, 2016 Ark. 20, at 5, 480 S.W.3d 158, 161. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id*. Accordingly, when there is evidence of a defendant's guilt, even if it is conflicting, it is for the jury as fact-finder to resolve any conflicts and inconsistencies; it is not for the court to resolve on a directed-verdict motion. *Id*. Had a directed-verdict motion been properly made to preserve the sufficiency issue, and viewing the evidence in the light most favorable to the

verdict, we would conclude that there is sufficient evidence to support the conviction for terroristic act.

Next, appellant argues the evidence is insufficient to support first-degree felony murder because Holmes did not cause the death of AK to further the commission of the terroristic act. He cites *Craig v. State*, 70 Ark. App. 71, 14 S.W.3d 893 (2000), and *Parker v. State*, 292 Ark. 421, 731 S.W.2d 756 (1987), in support of his argument.

> Arkansas Code Annotated section 5-10-102(a)(1) (Supp. 2017) provides:
>
> (a)  A person commits murder in the first degree if:
>
> (1) Acting alone or with one (1) or more other persons:
>
> (A) The person commits or attempts to commit a felony; and
>
> (B) In the course of and in the furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life[.]

Almost the exact argument Holmes raises here was recently addressed and rejected by our supreme court in *Noble v. State*, 2017 Ark. 142, 516 S.W.3d 727.

In *Noble*, several teenagers went to Noble's home to play a prank on Noble's son by throwing toilet paper, leaves, and mayonnaise on his son's car. Noble's dog was barking, and he looked outside and saw the toilet paper and leaves on his son's car. The teenagers had left but returned later to throw eggs at his home and his neighbor's home. As the teenagers were leaving in their car, Noble went outside with a gun and fired multiple shots in the direction of the teenagers' car, shattering the driver's-side window, cracking the windshield, and leaving several bullet holes in the car. Adrian Broadway, who was the front-seat passenger, was shot in the head and killed by one of Noble's shots.

6

The *Noble* court began its analysis by distinguishing *Parker* and *Craig*, which are also the cases cited by Holmes in support of his argument. Noble argued that *Parker* stood for the proposition that the language "in the course and furtherance of" requires that the death facilitated the felony. The underlying felony in *Parker* was burglary. The supreme court reversed the felony-murder conviction because the felony-murder statute could not be read to encompass the facts, which showed that Parker entered the home (which was the felony) with the sole purpose to commit murder. *Parker*, 292 Ark. at 425, 731 S.W.2d at 758. The *Noble* court interpreted the *Parker* decision to mean that "the felony murder statute does not include a fact pattern where 'in the course and furtherance of' a murder, one commits a felony and thus can be charged with felony murder." *Noble*, 2017 Ark. 142, at 5, 516 S.W.3d at 731.

In *Craig*, the defendant beat up the victim so severely after a series of ongoing arguments that he died. *Craig*, 70 Ark. App. 71, 14 S.W3d 893. Craig was convicted of first-degree felony murder. *Id*. On appeal, this court reversed, noting that the evidence established that the defendant "assaulted, beat and kicked [the victim] in furtherance of the homicide, not in furtherance of committing an independent felony." *Id*. at 79, 14 S.W.3d at 899.

The *Noble* court concluded that *Parker* and *Craig* "establish that in order to be convicted of felony murder, the defendant must have an intent or objective to commit the underlying felony as opposed to the primary goal of murder." *Noble*, 2017 Ark. 142, at 5, 516 S.W.3d at 731. In applying the felony-murder statute to the facts in *Noble*, the supreme court stated:

Looking at the plain language of the statute, "a person commits murder in the first degree if, . . . in the course of and in furtherance of the felony [terroristic act] . . ., the person . . . cause[s] the death of any person . . . ." Ark. Code Ann. § 5-10-102(a)(1). Here, after reviewing the evidence in the light most favorable to the State, we conclude that there was substantial evidence that Noble "in the course of and in furtherance of" committing the terroristic acts of shooting at an occupied vehicle with the intent to cause property damage, caused the death of Broadway. Thus, unlike *Parker* and *Craig*, the death occurred "in the course of and in furtherance of" the felony, as opposed to the felony occurring "in the course of and in furtherance of" the murder. Noble had an independent objective to commit terroristic acts, and his intent related to the acts of terrorism, not to murder. *See Perry v. State*, 371 Ark. 170, 177–78, 264 S.W.3d 498, 503 (2007) ("[T]he culpable intent or *mens rea* relates to the crime of the underlying felony . . . and not to the murder itself.). As we cannot find that the circuit court erred in denying the directed-verdict motions, we affirm.

*Noble*, 2017 Ark. 142, at 5–6, 516 S.W.3d at 731.

Holmes's argument and the facts of this case are basically identical to those in *Noble*. The evidence established that AK's death occurred in the course of and in the furtherance of the felony, rather than the felony occurring in the course of and in the furtherance of the murder. Based on the facts presented, there is substantial evidence that Holmes, in the course of and in the furtherance of committing the terroristic act of shooting at an occupied vehicle with the intent to cause property damage, caused the death of AK. Therefore, we cannot find that the circuit court erred in denying the directed-verdict motion.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Ronald L. Davis, Jr., Law Firm, PLLC*, by: *Ronald L. Davis, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Senior Ass't Att'y Gen., for appellee.