The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Alarico MEDINA, Defendant–Appellant.

No. 05CA1605.

Colorado Court of Appeals,
Div. VII.

Aug. 5, 2010.

John W. Suthers, Attorney General, Katherine A. Hansen, Senior Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Samler & Whitson, P.C., Eric A. Samler, Hollis A. Whitson, Denver, CO, for Defendant–Appellant.

Opinion by Judge CONNELLY.

Defendant, Alarico Medina, was convicted after a jury trial of felony murder and sentenced to life imprisonment. The jury also found defendant guilty of manslaughter and burglary, but the court merged those counts into the felony murder conviction. Finally, defendant was convicted of criminal trespass. We affirm.

## I. Background

The homicide occurred after defendant's girlfriend asked defendant to beat up the victim because she mistakenly believed the victim had raped her friend. Four men, including defendant, drove to the victim's apartment complex. Defendant and one of the men, who later testified against defendant in return for reduced charges, exited the car and went inside the complex.

Defendant knocked on the apartment door, and the victim answered. Upon identifying himself by name, the victim was shot point blank and killed.

There was no dispute that defendant and the other man were both present, and that one of them had shot the victim. There was also evidence supporting a jury finding that defendant or the other man had entered the

apartment with intent to assault the victim. The identity of the shooter was hotly contested.

The other man testified that defendant shot the victim; defendant testified that the other man was the shooter. The only independent witness to the murder could not identify who shot the victim, though some aspects of his testimony lent support to defendant's claim that the other man was the shooter.

The jury's guilty verdict on the felony murder count found specifically that defendant had committed a completed burglary. Its separate burglary verdicts found defendant guilty of first degree burglary because he *or a participant* had committed assault and menacing and had been armed with a deadly weapon.

It appears, however, the jury was not convinced defendant was the shooter. This is suggested by the jury's (1) finding that defendant did not possess a weapon, (2) note asking if defendant had to be the shooter to be convicted of murder, and (3) return of a manslaughter (not intentional murder) verdict.

## II. Discussion

### A. Felony Murder Predicated on Burglary

■ Defendant argues that a felony murder conviction cannot stand where the predicate felony is a burglary committed for purpose of assault. This is an issue of statutory construction, *see People v. Lewis*, 791 P.2d 1152, 1153–54 (Colo.App.1989), subject to de novo review. *People v. Madden*, 111 P.3d 452, 457 (Colo.2005). Because we conclude there was no error, we need not resolve the parties' debate over whether this argument was sufficiently preserved or should be reviewed only for plain error.

The felony murder statute is unequivocal. It applies where a defendant "commits or attempts to commit ... burglary" (or other predicate crimes) and anyone causes death of a nonparticipant "in the course of or in furtherance of" (or in immediate flight from) that crime. § 18–3–102(1)(b), C.R.S.2009. And Colorado burglary statutes, covering un-

lawful entries of buildings or occupied structures "with intent to commit therein a crime, other than trespass ..., against another person or property," §§ 18–4–202(1) & 18–4–203(1), C.R.S.2009, plainly include the intended crime of assault. *See People v. Delci*, 109 P.3d 1035, 1037 (Colo.App.2004).

Consistent with this unequivocal statutory language, prior divisions of this court have upheld felony murder convictions based on the predicate offense of burglary with intent to commit assault. *Lewis*, 791 P.2d at 1153–54 (Colo.App.1989), *followed in People v. Ager*, 928 P.2d 784, 789 (Colo.App.1996). Though defendant attempts to raise factual distinctions between those cases and this one, *Lewis* and *Ager* were decided based on the relevant statutes and not on their particular facts.

Defendant asks us to reject the holdings in *Lewis* and *Ager*, in favor of purportedly contrary decisions of other state courts. We are convinced, however, not only that *Lewis* and *Ager* were decided correctly but also that their result is consistent with decisions of other state courts interpreting similar felony murder statutes.

Several out-of-state cases cited by defendant stand simply for the proposition that *an assault or battery* cannot be a felony murder predicate. *See, e.g., Bowman v. State*, 162 Wash.2d 325, 172 P.3d 681, 683 (2007); *State v. Heemstra*, 721 N.W.2d 549, 557–58 (Iowa 2006); *People v. Morgan*, 197 Ill.2d 404, 259 Ill.Dec. 405, 758 N.E.2d 813, 836–38 (2001). These cases track the reasoning of then Chief Judge Cardozo: an assault that is not "independent of the homicide" must "merge" into the homicide; otherwise, "every homicide, not justifiable or excusable, would occur in the commission of a felony, with the result that intent to kill and deliberation and premeditation would never be essential." *People v. Moran*, 246 N.Y. 100, 158 N.E. 35, 36 (1927).

Here, in contrast, the assault was not—and under Colorado's statute, could not have been—a felony murder predicate. *See* § 18–3–102(1)(b) (felony murder predicates are arson, robbery, burglary, kidnapping, some sexual assaults, and escape). The predicate crime was burglary, not assault. While proof

of an assault can raise burglary from second to first degree, *compare* § 18–4–203(1) *with* § 18–4–202(1), the degree of burglary makes no difference here because second degree burglary is also a felony murder predicate. *See People v. White,* 64 P.3d 864, 876 (Colo. App.2002).

■ Making all burglaries felony murder predicates does not obliterate distinctions among homicides. While homicide inevitably involves an assault, not all homicides involve burglaries. And burglaries are Article 4 "Offenses Against Property" that involve conduct and harm distinct from any assault or resulting death. The felony murder doctrine is designed to heighten penalties where death results during inherently dangerous felonies. *See Auman v. People,* 109 P.3d 647, 655 (Colo.2005); 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.5(a), at 446 (2d ed.2003). Excluding assault-driven burglaries—categorically, the most dangerous burglaries—would disserve this purpose.

Defendant, by looking past the burglary to the intended assault, essentially urges "a two-step version of the merger doctrine." *State v. Makthepharak,* 276 Kan. 563, 78 P.3d 412, 418 (2003). Most courts, consistent with *Lewis* and *Ager,* reject that approach. *State v. Moore,* 222 Ariz. 1, 213 P.3d 150, 163 (2009); *Makthepharak,* 78 P.3d at 418; *State v. Contreras,* 118 Nev. 332, 46 P.3d 661, 664 (2002); *State v. Dasa,* 234 Or.App. 219, 227 P.3d 228, 239 (2010); *see also United States v. Loonsfoot,* 905 F.2d 116, 118 (6th Cir.1990) (citing cases); LaFave, *supra, Substantive Criminal Law* § 14.5(g), at 470–71 & n. 28 (citing cases following this "majority view"). *Compare Commonwealth v. Claudio,* 418 Mass. 103, 634 N.E.2d 902, 905–06 (1994) (following "majority, ... better reasoned view" that burglary with intent to assault can be felony murder predicate), *with Commonwealth v. Gunter,* 427 Mass. 259, 692 N.E.2d 515, 525–27 (1998) (crime of armed assault within dwelling normally not sufficiently independent of resulting death to be a felony murder predicate).

With one exception, the courts not allowing felony murder to be based on assault-motivated burglaries construed differently phrased statutes. *See Williams v. State,* 818 A.2d 906, 912–13 (Del.2002), *superseded by statute as noted in Comer v. State,* 977 A.2d 334, 340 (Del.2009); *Sellers v. State,* 295 Ark. 489, 749 S.W.2d 669, 670 (1988). Those statutes required that death occur *both* in the course of *and* in furtherance of the burglary. *Williams,* 818 A.2d at 913 ("the murder, although 'in the course of' the burglary, was not carried out 'in furtherance of' it"); *Sellers,* 749 S.W.2d at 671 (similar); *cf. People v. Cahill,* 2 N.Y.3d 14, 777 N.Y.S.2d 332, 809 N.E.2d 561, 587–90 (2003) (relying on conjunctive statutory language to hold that burglary committed with intent to murder cannot elevate intentional murder to capital murder). In contrast, our statute is phrased disjunctively to cover deaths occurring "in the course of *or* in furtherance of" a burglary. § 18–3–102(1)(b) (emphasis added).

California was the one exception. For four decades after engrafting an extra-statutory limit, *see People v. Wilson,* 1 Cal.3d 431, 82 Cal.Rptr. 494, 462 P.2d 22 (1969), its courts struggled to decide which burglaries could be felony murder predicates. But last year, citing the "analytical anomalies" this had spawned, the California Supreme Court overruled *Wilson* and held the felony murder statute covered all burglaries. *People v. Farley,* 46 Cal.4th 1053, 96 Cal.Rptr.3d 191, 210 P.3d 361, 407–11 (2009). Its ruling, like ours, was based on the felony murder statute's unequivocal language making no distinctions among burglaries. *Id.*

### B. Double Jeopardy

■ Defendant argues that it violated double jeopardy to use the same act (breaking the threshold of the apartment to shoot the victim) to prove both the burglary and the felony murder. It is not clear that a single act sufficed to prove both crimes: there had to be both a breaking and a shooting. In any event, where separate statutory crimes are involved, double jeopardy analysis looks to "the statutory elements of the offenses in question, not the evidence presented at trial." *People v. Leske,* 957 P.2d 1030, 1036 (Colo.1998) (applying "statutory elements test" of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). Defendant misplaces reliance on

*Woellhaf v. People*, 105 P.3d 209 (Colo.2005), which involved the appropriate "unit of prosecution" for a single offense. *Id.* at 214–15.

We have held that burglary, even where actuated by intent to commit an assault, is a felony murder predicate. That holding raises no issue of double jeopardy. *See* LaFave, *supra*, *Substantive Criminal Law* § 14.5(g)(3), at 471. And because the sentencing court merged the burglary convictions and the manslaughter conviction into the felony murder conviction, there is no problem of multiple punishment.

### C. Alleged Instructional Errors

#### 1. Burglary

■ Trial courts must instruct juries correctly on all matters of law, *People v. Garcia*, 28 P.3d 340, 343 (Colo.2001), and we review legal challenges to jury instructions de novo. *People v. Lucas*, 232 P.3d 155, 162 (Colo.App.2009). But trial courts also have "substantial discretion in formulating the jury instructions, so long as they are correct statements of the law and fairly and adequately cover the issues presented." *People v. Gallegos*, 226 P.3d 1112, 1115 (Colo.App. 2009).

■ Defendant contends the burglary instruction was "misleading." Its alleged flaw was a reference to unlawful entry of a "building." According to defendant, the instruction should have been tailored to fit the facts of this case by requiring unlawful entry of the victim's "dwelling" within the larger building.

There was no legal error in this instruction. The burglary statutes cover "a building or occupied structure." § 18–4–202(1) (first degree burglary); *accord* § 18–4–203(1) (second degree burglary). Whether that building is also a "dwelling" is relevant only to potential classification of a second degree burglary, *see* § 18–4–203(2)(a), C.R.S.2009 (making it a class three rather than class four felony in that event), and to the lesser offense of criminal trespass. *See* § 18–4–502, C.R.S.2009. Thus, even where (as here) the building in question also happens to be a dwelling, a first degree burglary instruction need not reference that point.

■ Defendant has not shown that the burglary instruction's proper reference to a building rather than dwelling was misleading. The only potential confusion could have arisen if jurors had been led to believe that somehow entering the common areas of an apartment complex, without entering an apartment itself, was unlawful. But the evidence showed that defendant or his confederate entered the apartment, and the jury was read the parties' stipulation that "[i]t is not unlawful for persons to be in a common walkway area of a building that is open to the public."

#### 2. Complicity

■ On appeal, defendant challenges the complicity instruction requiring proof beyond a reasonable doubt that "[t]he defendant did intentionally aid, abet, advise, or encourage the other person in the commission or planning of the crime." He now contends this complicity instruction, which tracked Colorado's pattern instruction, CJI–Crim. 6:04 (1983), erroneously failed to include the statutory requirement that a complicitor act "with the intent to promote or facilitate the commission of the offense." § 18–1–603, C.R.S.2009.

At trial, defendant did not raise his current objection to the complicity instruction. He accordingly must show the challenged omission was a plain and substantial error that "undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) (internal quotations omitted).

Our supreme court has criticized the pattern instruction for not explicitly including the statutory requirement that a complicitor have intended to facilitate the underlying crime. *Bogdanov v. People*, 941 P.2d 247, 253–54 & n. 10 (Colo.), *modified*, 955 P.2d 997 (Colo.1997), *disapproved of on other grounds by Griego v. People*, 19 P.3d 1 (Colo. 2001). While *Bogdanov* held the pattern instruction "should" be modified to include this requirement explicitly, it declined to reverse a conviction on that ground. 941 P.2d at 253–55. A division of this court subsequently

held that omitting this explicit language does not constitute "instructional plain error." *People v. Close*, 22 P.3d 933, 937 (Colo.App. 2000), *aff'd*, 48 P.3d 528 (Colo.2002); *see also People v. Collins*, 187 P.3d 1178, 1184 (Colo. App.2008) ("we conclude the district court did not err in using the pattern complicity instruction").

We decline, as have all other reported Colorado cases, to reverse on this ground. Once the jury concluded that a burglary resulting in death had occurred, the evidence of defendant's complicity was overwhelming: indisputably, defendant was the one asked by his girlfriend to beat up the victim; he and the other man went together to the apartment; and he knocked on the door.

Defendant's principal claim of prejudice is that (crediting his own testimony) he did not intend to promote first degree burglary because he neither shot the victim nor knew beforehand that his accomplice was armed. Even if the jury credited this claimed lack of intent and knowledge, it would be legally unavailing. Second degree burglary, which does not require a weapon, *see* § 18–4–203(1), is also a felony murder predicate. Defendant thus cannot show a "reasonable possibility that the [instructional] error contributed to his [felony murder] conviction." *Miller*, 113 P.3d at 750 (internal quotations omitted).

### D. Alleged Perjury and Prosecutorial Misconduct

Defendant makes two related arguments stemming from his contention that the cooperating witness rather than defendant was the shooter. First, renewing a contention initially noted in a post-trial motion, he claims the prosecution knowingly presented perjured testimony. Second, renewing an objection raised before closing arguments, he claims the prosecution improperly argued inconsistent theories. We will assume both arguments were adequately preserved and decide the legal merits of each.

### 1. Alleged Knowing Presentation of Perjured Testimony

■ It is fundamental that prosecutors may not present or allow perjured testimony.

*See United States v. Bagley*, 473 U.S. 667, 679 n. 8, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (discussing cases including *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935)); *DeLuzio v. People*, 177 Colo. 389, 395, 494 P.2d 589, 592 (1972); *People v. Dunlap*, 124 P.3d 780, 807 (Colo.App.2004).

Under federal case law, defendant must show three things: first, that the prosecution's case included perjured testimony; second, that the prosecution knew or should have known of the perjury; and third, that the perjury was material. *See, e.g., United States v. Saadeh*, 61 F.3d 510, 523 (7th Cir. 1995); *United States v. Duke*, 50 F.3d 571, 577–78 (8th Cir.1995). The materiality standard, which is less stringent than in other contexts, asks if "there was 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Helmsley*, 985 F.2d 1202, 1205–06 (2d Cir.1993) (quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)); *accord Rosencrantz v. Lafler*, 568 F.3d 577, 587 (6th Cir.2009); *cf. Farrar v. People*, 208 P.3d 702, 706–08 (Colo. 2009) (in imposing high standard in witness recantation cases, court noted such cases are "[u]nlike assertions of prosecutorial subornation of perjury").

The first two requirements—involving perjured witness testimony and prosecution culpability—are heavily fact dependent. Because those issues normally cannot be resolved from a cold trial record, these types of claims "usually" must be "made on a collateral attack." *Helmsley*, 985 F.2d at 1206.

■ We cannot decide on this record whether the cooperating witness perjured his testimony that defendant was the shooter and, if so, whether the prosecutor knew or should have known of the perjury. Those types of "credibility" determinations are left for triers of fact and not for reviewing courts to "second-guess." *People v. Harlan*, 109 P.3d 616, 627–28 (Colo.2005); *People v. McNeely*, 222 P.3d 370, 373 (Colo.App.2009); *see also Kansas v. Ventris*, 556 U.S. 586, 129 S.Ct. 1841, 1847 n. *, 173 L.Ed.2d 801 (2009) ("[o]ur legal system . . . is built on the prem-

ise that it is the province of the jury to weigh the credibility of competing witnesses"). It is for this reason that reviewing courts evaluating sufficiency challenges must "view[ ] the evidence in the light most favorable to the prosecution." *Clark v. People*, 232 P.3d 1287, 1291 (Colo.2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

What we do know is that the jury could only have made one of two credibility findings: that defendant was the shooter (as the cooperating witness testified) or that defendant was not the shooter (or at least was not proven beyond a reasonable doubt to have been the shooter). As a matter of law, defendant's perjury challenge would fail under either scenario.

■ First, if the jury had credited the witness's testimony, after defendant had "ample opportunity to rebut [that] testimony and undermine [its] credibility," we could "not supplant the jury as the appropriate arbiter of the truth." *United States v. Zichettello*, 208 F.3d 72, 102 (2d Cir.2000) (internal quotations omitted). Where previously undisclosed evidence shows testimony was perjured, courts must evaluate the effect such new evidence might have had on the jury. *See Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). But defendant here does not base his perjury allegation on previously undisclosed information. His claim fails because "[t]here was no suppression of evidence" preventing the jury itself from fully evaluating witness credibility. *Hammond v. Hall*, 586 F.3d 1289, 1308 (11th Cir.2009).

The other possibility (which is what defendant and the verdicts suggest occurred) is that the jury discredited the witness's testimony. In that event, defendant's challenge would fail under the third prong of the legal test because there would be no reasonable possibility the false testimony affected the jury verdict.

### 2. Inconsistent Prosecution Theories

■ Defendant finally contends that it violated due process for the prosecution to argue "inconsistent factual theories." The People, while denying the merit of this contention, agree it raises a legal issue reviewed de novo. *See generally People v. Minor*, 222 P.3d 952, 955 (Colo.2010) (questions of law reviewed de novo).

■ The alleged inconsistency stems from the prosecution's arguments that defendant was the shooter but could be convicted of felony murder "no matter who [was] the shooter." These arguments were not inconsistent but were simply alternative theories upon which defendant properly could be convicted of murder depending on how the jury viewed the evidence. *Cf. Erwin v. People*, 126 Colo. 28, 30, 245 P.2d 1171, 1172 (1952) ("It was proper for the jury to determine from all the evidence whether defendant participated in the crime charged, as principal or accessory."). Where evidence as to which confederate actually shot a victim is disputed, it is not improper for the prosecution to argue that a defendant should be convicted under "alternative legal theories." *People v. Hall*, 60 P.3d 728, 730–31 (Colo.App.2002) (prosecution allowed to argue that "defendant either had fired the shot that killed the victim or had aided and abetted her ex-husband in killing him").

Defendant relies on cases in which prosecutors have taken inconsistent positions in separate cases involving different defendants. The law in such cases is not clearly settled. *Fotopoulos v. Secretary*, 516 F.3d 1229, 1234 (11th Cir.2008).

In *Bradshaw v. Stumpf*, 545 U.S. 175, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005), the Court held that "prosecutorial inconsistencies" as to which of two men shot the victim did not warrant vacating the first defendant's guilty plea, because "the precise identity of the triggerman was immaterial to [his] conviction for aggravated murder," but did warrant further review of defendant's challenge to his death sentence. *Id.* at 186–88, 125 S.Ct. 2398; *compare id.* at 189–90, 125 S.Ct. 2398 (Souter, J., with Ginsburg, J., concurring) (discussing possible due process limits on inconsistent positions in different cases) *with id.* at 190, 125 S.Ct. 2398 (Thomas, J., with Scalia, J., concurring) ("This Court has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories."); *see also United States v. Presbitero*, 569 F.3d 691, 702 (7th Cir.2009) (citing cases finding "due process violations where the govern-

ment took fundamentally opposite positions in different trials involving the same crime" but noting that "[n]ot everyone agrees"); *United States v. Frye,* 489 F.3d 201, 214 (5th Cir.2007) (no due process violation as long as both defendants properly could be convicted of murder regardless of who actually shot victim) (citing *United States v. Paul,* 217 F.3d 989, 998–99 (8th Cir.2000)).

These due process cases, and the difficult issues they raise, are inapposite because they involve different defendants "in different trials." *Presbitero,* 569 F.3d at 702. Due process does not preclude a prosecutor from advancing alternative theories upon which a jury properly could convict one defendant in one trial. *See* Anne Bowen Poulin, *Prosecutorial Inconsistency, Estoppel and Due Process: Making the Prosecution Get Its Story Straight,* 89 Cal. L. Rev. 1423, 1429 (2001) ("[i]ssues of inconsistency [that] arise within a single trial ... do not threaten the basic fairness of the process" because "the fact finder can weigh inconsistent alternatives in the context of the whole case").

### III. Conclusion

The judgment is affirmed.

Judge BERNARD and Judge LICHTENSTEIN concur.