23CA2000 Peo v Kim 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2000
Arapahoe County District Court No. 22CR388
Honorable Michelle Jones, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Geoffrey S. Kim,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE BERNARD*
Grove and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado, for Plaintiff-Appellee

Law Office of Keyonyu X O'Connell, Keyonyu X O'Connell, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    A jury found defendant, Dr. Geoffrey S. Kim, guilty of attempted reckless manslaughter and obstruction of telephone service.  He appeals.  We affirm.

## I.    Background

¶ 2    On August 1, 2019, the victim went to defendant's surgical center for cosmetic surgery.  A certified registered nurse anesthetist, who worked for defendant, gave her a combination of drugs — midazolam, fentanyl, and propofol — to sedate her for the surgery.

¶ 3    Shortly after the victim received these drugs, her heart stopped beating.  Within a minute, the anesthetist ventilated her, and defendant began performing chest compressions.  Although her heart rate returned quickly after that, the victim remained comatose.

¶ 4    At trial, the anesthetist and a nurse testified that, after the victim's heart rate returned, surgical staff repeatedly asked defendant to call 911 for emergency care.  The nurse testified that defendant either ignored the requests or said that the victim would "wake up in [his operating room]."  The anesthetist testified that he did not feel he could "override [defendant's] decision."  During this

time, defendant and his staff repeatedly assured the victim's mother, who had accompanied the victim to the surgical center, that the victim was "fine."

¶ 5     The anesthetist finally called 911 about six hours later. One of the emergency medical technicians who came to the surgical center testified that defendant told him the 911 call had been placed "during [the] time that they were doing [cardio-pulmonary resuscitation]" on the victim.

¶ 6     The victim did not regain consciousness after being transferred to the hospital. She died fourteen months later.

¶ 7     The prosecution charged defendant with having committed three crimes: criminally negligent homicide in violation of section 18-3-105, C.R.S. 2024; reckless manslaughter in violation of section 18-3-104(1)(a), C.R.S. 2024; and obstruction of telephone service in violation of section 18-9-306.5, C.R.S. 2024. The jury convicted him of attempted reckless manslaughter, a lesser included offense of the manslaughter charge, and obstruction of telephone service.

## II. Analysis

¶ 8    For the purposes of our discussion, we group defendant's contentions into four categories based upon how they interrelate.

¶ 9    First, he submits that the court erred when it admitted irrelevant evidence and that the prosecution committed misconduct by prosecuting defendant while knowing the elements of the charged crimes were not supported by admissible evidence.

¶ 10    Second, he contends that the prosecution committed misconduct by allowing witnesses to commit perjury and by making improper arguments in closing argument.

¶ 11    Third, he asserts that the court erred when it instructed the jury on a lesser included offense, when it violated his confrontation clause rights by excessively limiting cross-examination, and when it denied his request for partial transcripts.

¶ 12    Fourth, he submits that the prosecution presented insufficient evidence to support his conviction for obstruction of telephone service contrary to section 18-9-306.5(1).

### A. Standard of Review

¶ 13    We review the trial court's evidentiary rulings for an abuse of discretion. *People v. Quillen*, 2023 COA 22M, ¶ 14. We apply the

same standard to defendant's submissions that the prosecution engaged in misconduct, that there was insufficient evidence to support an instruction on a lesser included offense, and that the court erred when it denied his request for partial transcripts. *See People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010); *People v. Abdulla*, 2020 COA 109M, ¶ 11; *People v. Dunlap*, 124 P.3d 780, 817 (Colo. App. 2004). "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law." *People v. Vigil*, 2024 COA 72, ¶ 19.

¶ 14     We review de novo whether the court applied the correct legal standard when evaluating the prosecutor's request to instruct on a lesser included offense, whether it violated defendant's confrontation clause rights by excessively limiting cross-examination, and whether sufficient evidence supported a conviction. *See Abdulla*, ¶ 11; *People v. Houser*, 2013 COA 11, ¶ 57; *People v. Liebler*, 2022 COA 21, ¶ 14.

¶ 15     When an assertion is unpreserved, we will reverse only if the defendant establishes that any error was plain, meaning there is "(1) an error, (2) that is obvious, and (3) that so undermines the

fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Cardman v. People*, 2019 CO 73, ¶ 19. An error is obvious if the action challenged on appeal contravenes a clear statutory command, a well-settled legal principle, or Colorado case law. *Id.* at ¶ 34. To decide whether an error undermines a conviction to the point that we have serious doubts about its reliability, we ask whether "a reasonable possibility exists that [any error] . . . contributed to [the] conviction." *Id.* at ¶ 39 (citation omitted).

## B. Inadmissible Evidence

¶ 16    Defendant contends that we must vacate his conviction for attempted reckless manslaughter because all the evidence presented at trial to support it was inadmissible. Relatedly, he asserts that the prosecution's pursuit of the charged offenses, knowing that they were supported only by what he characterizes as inadmissible evidence, was prosecutorial misconduct. We disagree with both contentions.

### 1. Additional Facts

¶ 17    At trial, the parties presented conflicting evidence about what caused the victim's death.

¶ 18    The prosecution's theory was that defendant's delay in transferring the victim to the hospital was "the reckless cause of [the victim's] death."  Accordingly, the prosecution presented evidence showing the following:

- The medically appropriate step for a doctor to take after a patient suffers cardiac arrest in a clinic like defendant's is to transfer her to a better-equipped facility for advanced care.

- Defendant's own protocols required him to call 911 "as soon as" a patient suffered a cardiac arrest.

- "There is no medical basis" for "do[ing] nothing" after a patient "sustains an out-of-hospital but in-healthcare-facility cardiac arrest."

- Transferring the victim to a hospital "would have given her the most improved chance of survival."

- Defendant's hours-long refusal to call 911 and arrange for the victim's transfer to a hospital after she suffered cardiac arrest was "reckless" and represented "a gross deviation from the standard of care that a reasonable person . . . would exercise."

¶ 19     The defense theorized that the cause of the victim's death was the dosage of anesthesia administered by the anesthetist. Defendant presented evidence that the anesthetist "overdosed . . . [the victim's] sedation," particularly the fentanyl, which caused irreversible brain damage that, in turn, led to her cardiac arrest. He also presented testimony that the outcome would not have been different even if defendant had immediately called 911.

## 2.     Discussion

¶ 20     "Only relevant evidence is admissible." *People v. N.T.B.*, 2019 COA 150, ¶ 15; CRE 402.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  CRE 401.  To prove homicide or manslaughter, the prosecution must prove that a "defendant's conduct was the actual cause of death, in the sense that it began a chain of events the natural and probable consequence of which was the victim's death."  *People v. Saavedra-Rodriguez*, 971 P.2d 223, 225 (Colo. 1998).

¶ 21     Defendant contends that the prosecution presented "no evidence that [defendant's] conduct began the chain of events"

leading to the victim's death. Instead, he asserts, "all evidence presented" supported the theory that defendant's failure to get timely help was "an intervening/contributory cause of death" rather than the actual cause. As a result, he finishes up, all the evidence introduced in support of the prosecution's theory was irrelevant and inadmissible.

¶ 22 But defendant's assertion ignores a critical piece of the prosecution's theory of the case: It argued, supported by evidence, that the victim had not suffered irreversible brain damage at the point when defendant restarted her heart by performing chest compressions. Under this theory, it was not the anesthesia that caused her eventual death; rather, it was defendant's decision to "wait[] on the injury, allow[] the injury to languish, [and] fail[] to get any type of appropriate aid." In other words, the prosecution did not argue that defendant was an intervening or contributing cause of the victim's death; it argued that defendant was the actual cause of her death.

¶ 23 The prosecution's evidence was relevant to prove this theory, and we therefore conclude that the court's decision to admit it was not manifestly arbitrary, unreasonable, or unfair and that its

decision did not misconstrue or misapply the law. *See Vigil*, ¶ 19. For example, the prosecution offered testimony that defendant did not immediately call 911 and, moreover, instructed his staff not to do so, despite their multiple requests, and presented evidence that the victim's chances of survival would have increased had she been quickly transferred to the hospital. This testimony made it more likely that defendant's failure to promptly transfer the victim to the hospital was the cause of her death. We recognize that the defense presented conflicting evidence on this point, but it does not make the prosecution's evidence irrelevant; it merely creates a triable issue of fact to be resolved by the fact finder. *See People v. Perez*, 2016 CO 12, ¶ 25 ("When conflicting evidence exists, the jury must be allowed 'to perform its historic fact-finding function.'")(citation omitted).

¶ 24      Because we conclude that the challenged evidence was admissible, we must, as a logical extension of that conclusion, likewise reject defendant's assertion that the prosecution committed misconduct by prosecuting a case it knew was "unsupported by admissible evidence."

## C. Jury Instructions

¶ 25 Defendant next submits that the court erred by instructing the jury (1) on the lesser included offense of attempted reckless manslaughter over his objection and (2) about impossibility. We are not persuaded.

### 1. Applicable Law

¶ 26 A defendant may be convicted of a lesser offense that consists of "an attempt to commit . . . the offense charged." Crim. P. 31(c); *see also* § 18-1-408(5)(b), C.R.S. 2024. But, when an instruction on such an offense is sought by the prosecution over the defendant's objection, *People v. Cooke* requires that the lesser included offense be "(1) easily ascertainable from the charging instrument, and (2) not so remote in degree from the offense charged that the prosecution's request appears to be an attempt to salvage a conviction from a case which has proven to be weak." 525 P.2d 426, 428-29 (Colo. 1974). This requirement is intended to safeguard "the primacy of notice within the constitutional guarantee of due process of law." *Id.* at 428.

¶ 27 When a defendant's objection to an instruction on a lesser included offense rests on insufficient evidence to support it, as

10

opposed to lack of notice about the possibility of such an instruction, "the trial court must . . . determine that there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser included offense." *Abdulla,* ¶ 16; *see also* § 18-1-408(6). "Such a rational basis exists when 'there is some evidence, however slight, tending to establish the lesser included offense.'" *Id.* at ¶ 13 (citation omitted).

## 2.  *Cooke* Challenge

¶ 28     Defendant does not contest that attempted reckless manslaughter is a lesser included offense of reckless manslaughter or that it is therefore "easily ascertainable from the charging instrument," as demanded by the first prong of *Cooke.*  525 P.2d at 429; *see also* § 18-1-408(5)(b)("A defendant may be convicted of an offense included in an offense charged in the . . . information.  An offense is so included when . . . [i]t consists of an attempt . . . to commit the offense charged . . . .").  Instead, defendant submits that the court erred by instructing the jury on attempted reckless manslaughter because it was an "attempt to salvage a conviction" from a "weak case."  We conclude, for two reasons, that the court did not abuse its discretion when it gave the jury this instruction.

11

¶ 29    First, the challenged lesser included offense, attempted manslaughter, is not remote in degree from the offense charged. *See Cooke*, 525 P.2d at 429.  The charged offense was manslaughter, a class four felony.  § 18-3-104(2).  Attempted manslaughter is a class five felony.  *See* § 18-2-101(4), C.R.S. 2024. Given that these offenses were separated by just one degree, we reject defendant's assertion that the inclusion of the lesser was "so remote in degree from the offense charged that the prosecution's request appears to be an attempt to salvage a conviction from a case which has proven to be weak."  *Cooke*, 525 P.2d at 429.

¶ 30    Second, we do not agree that the prosecution's case was weak. True, the court noted that the case was "highly defensible."  But there is a difference between "weak" and "highly defensible."  As noted above, the prosecution presented considerable evidence that defendant did not call 911 despite multiple requests from his staff to do so, that his failure to do so was reckless and a gross deviation from the standard of care a reasonable person would have exercised, and that the victim's chances of survival would have increased had she been transferred to a hospital.

¶ 31    Last, to the extent that defendant submits that, under *Cooke*,

he had insufficient notice that the prosecutor would ask for a

factual or legal impossibility instruction, we decline to address this

submission because it is conclusory and undeveloped. *See People*

*v. Venzor*, 121 P.3d 260, 264 (Colo. App. 2005)(declining to review

issues that were presented in "a perfunctory or conclusory

manner").

### 3.    *Abdulla* Challenge

¶ 32    Defendant next contends that the trial court erred when, as

required by *Abdulla*, it did not make an explicit finding that there

was "a rational basis for a verdict acquitting the defendant of the

offense charged and convicting him of the lesser included offense."

*Abdulla*, ¶ 16.  We conclude that defendant did not preserve this

issue before the trial court and that any error was not plain.

¶ 33    Although we do not require talismanic language to preserve

arguments, "[p]arties must make objections that are specific enough

to draw the trial court's attention to the asserted error." *Martinez v.*

*People*, 2015 CO 16, ¶ 14.  In this case, defense counsel objected to

the inclusion of the lesser included offense on due process grounds,

echoing language from *Cooke*.  He did not cite *Abdulla* or object on

the grounds that there was no rational basis to acquit defendant of the offense charged and convict him of the lesser included offense, and he did not ask the court to make the *Abdulla* findings. We thus conclude that defendant did not preserve this issue, so we will analyze it to determine whether any error was plain.

¶ 34 We conclude that any error associated with the absence of *Abdulla* findings did not "so undermine[] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Cardman*, ¶ 19.

¶ 35 First, as we mentioned above, defendant's theory of the case was countered by the prosecution's theory. While there was evidence to support defendant's theory, there was likewise evidence to support the prosecution's theory.

¶ 36 Second, we have already concluded that, although there was a conflict in the evidence, the prosecution's case was not "weak."

¶ 37 Third, evidence supporting defendant's theory provided a rational basis for acquitting defendant of reckless manslaughter and criminally negligent homicide because it supported a potential jury verdict that it was the combination of drugs that the anesthetist administered to the victim that caused her death. And

14

evidence supporting the prosecution's theory provided a rational basis for convicting defendant of attempted reckless manslaughter because it raised the question of whether defendant's long refusal to contact emergency medical assistance, and the prospect that quicker action could have averted the victim's brain death, was a substantial step in the chain of events that led to her death. *See People v. Thomas*, 729 P.2d 972, 975 (Colo. 1986).

### D. Impossibility Instruction

¶ 38　　The court instructed the jury that factual or legal impossibility was not a defense to the lesser included offense of attempted reckless manslaughter. Defendant asserts that the court erred by giving this instruction to the jury. We conclude that defendant did not sufficiently develop this assertion, so we shall not consider it. *See People v. Stone*, 2021 COA 104, ¶ 52 (appellate courts do not address undeveloped arguments).

### E. Confrontation Clause

¶ 39　　Defendant next contends that the court violated his confrontation clause rights by precluding him from confronting the anesthetist and a prosecution expert with other act evidence showing that the anesthetist had lied about a previous malpractice

suit on his application to work for defendant and with information that the charges against the anesthetist had been dismissed in exchange for his testimony. We disagree.

### 1. Applicable Law

¶ 40 A defendant has a constitutional right to confront and to cross-examine witnesses about bias and impeachment evidence. *Krutsinger v. People*, 219 P.3d 1054, 1061 (Colo. 2009); *People v. Taylor*, 545 P.2d 703, 705 (Colo. 1976). But that right is not absolute or unlimited. *People v. McFee*, 2016 COA 97, ¶ 56. Instead, "[t]he scope and duration of cross-examination is under the control of the trial court subject to well-established rules." *Merritt v. People*, 842 P.2d 162, 166 (Colo. 1992)(citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). For example, a trial court has discretion to limit cross-examination "based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation which is repetitive or only marginally relevant." *Id.*

### 2. Additional Facts

¶ 41 Before trial, defendant filed a notice of intent to present extrinsic evidence of a prior civil wrongful death lawsuit that had been filed against the anesthetist in 2007. Defendant stated that,

16

because the anesthetist had not disclosed this lawsuit in his application to work for defendant, it was admissible under CRE 608(b) to attack the anesthetist's character for truthfulness and under CRE 404(b) to show absence of mistake or accident and common scheme, pattern, and practice.

¶ 42 After a hearing, the court ruled that it would not admit the evidence for three reasons. Initially, because defendant did not make an offer of proof about the outcome of, testimony in, or findings from the lawsuit, the court could not find "by a preponderance of the evidence that the acts as alleged in fact occurred." Next, the court decided that testimony about the lawsuit would have "a great tendency to muddle the issue before the jury and would be more prejudicial than probative," so it should be excluded under CRE 403. Last, the court determined that the evidence was inadmissible under CRE 404(b) because defendant had not shown how the evidence established absence of mistake or accident or common scheme, pattern, or practice.

¶ 43 During the trial, defense counsel asked the anesthetist during cross-examination if he "reached an agreement with the DA's office to dismiss [his] charges in exchange for testifying." The anesthetist

answered, "[N]o," adding that his charges had been dismissed "once they had questioned me and received my testimony and felt that there [were not] grounds for the charges" and that the prosecution had not asked him to testify in exchange for dismissing the charges.

¶ 44     At the trial's end, defense counsel gave the court a copy of the charges against the anesthetist and a proposed jury instruction regarding the anesthetist's credibility.  The prosecution objected, arguing both that defense counsel had not laid a foundation for the instruction and that there was no legal basis in the record to admit evidence of the anesthetist's arrest.  The court decided that it would not read the proposed instruction to the jury.

### 3.    Discussion

¶ 45     We conclude, for the following reasons, that the court did not abuse its discretion when it precluded defendant's other act evidence and, further, that this decision did not violate defendant's Sixth Amendment confrontation rights.

¶ 46     Defendant contends that he should have been permitted to cross-examine the anesthetist about whether he had been dishonest on his job application to show that he had a character for being untruthful.  But, as the court found considering the evidence

that had, and had not, been admitted, defendant had not shown, by a preponderance of the evidence, that the anesthetist had lied on the application. *See People v. Garner*, 806 P.2d 366, 370 (Colo. 1991).

¶ 47 The court found, with support in the record, that defendant had tendered a civil complaint, with no accompanying "offer of proof as to the outcome of the suit, or any testimony or findings from the suit." It noted that defendant had not provided an "attributed source of direct information for [the] allegation, such as a named witness" or a "citation to medical records." Finally, emphasizing that it had "no information before it that [the anesthetist] acknowledged liability in [the former] suit or any facts or findings" from it, the trial court held that the evidence could not survive a CRE 403 analysis because it would "muddle" the issues for the jury and would be more prejudicial than probative.

¶ 48 Next, we disagree with defendant that the court excessively limited cross-examination by precluding extrinsic evidence of the anesthetist's charges in this case. At the end of the trial, defense counsel tendered a copy of the charges and the motion to dismiss them without establishing a foundation for their admission, and

counsel did not cite any legal authority to support the request to admit them. While the motion to dismiss noted that the anesthetist had agreed to testify against defendant, the motion did not state that the charges against him had been dismissed as a quid pro quo in exchange for his testimony. Perhaps most importantly, the court stated that defense counsel could nonetheless say during closing argument that the jury could infer that the charges had been dismissed in exchange for the anesthetist's testimony, but counsel did not make such an argument.

¶ 49    Finally, we note that defense counsel cross-examined the anesthetist in detail, and defendant's expert and one of the prosecution's experts said they believed that the anesthetist had mis-dosed the victim, thus causing her cardiac arrest.

¶ 50    So the jury heard the gist of defendant's theory of the case:

- The jury learned that the anesthetist had originally been charged with crimes in this case and that the prosecution had later dismissed those charges.

- Impeachment of the anesthetist about the lawsuit involving him would have added little to defendant's theory of the

case, particularly because defense counsel's information about the lawsuit was so sketchy.

- Impeachment of the anesthetist with evidence that the charges against him had been dismissed would have had slight impact considering that defendant could not show that the charges had been dismissed in exchange for his testimony and considering that the court allowed him an opportunity, which he declined, to argue that there was an inference that the charges had been dismissed for that reason.

¶ 51 And impeachment of the anesthetist with the limited information about the lawsuit and the dismissal of the charges against him would not have had a significant effect on his testimony that defendant did not want to transfer the victim to the hospital for hours after she had been revived. Not only did the nurse corroborate the anesthetist's testimony, but defendant did not present any evidence that he wanted the victim transported to the hospital earlier than she was.

### F. Denial of Request for Transcripts

¶ 52 Defendant contends that the court erred when it denied his request for transcripts to support a C.A.R. 21 petition that he intended to file in our supreme court. He adds that the court's ruling denied his rights to effective assistance of counsel and to due process. We disagree, albeit on different grounds than the trial court used when it denied defendant's request. *See Million v. Grasse*, 2024 COA 22, ¶ 29 (The court of appeals "may affirm a trial court's judgment on any basis supported by the record."). We conclude, for reasons that we explain next, that the trial court did not err when it denied defendant's request for partial transcripts.

¶ 53 Before sentencing, defendant asked for transcripts to accompany a C.A.R. 21 petition. When defendant was told the entirety of the trial would not be transcribed within the requested timeframe, he asked for "partial transcripts." The transcription company said that it would not provide partial transcripts because they could be "taken out of context."

¶ 54 Later, counsel asked the court for partial transcripts so that counsel could challenge (1) the court's ruling on defendant's motion for a judgment of acquittal; (2) some of the jury instructions; (3) the

22

court's rulings about questions the jurors asked during deliberations; and (4) the court's ruling on the renewed motion for a judgment of acquittal. The court denied this request as "improper," reasoning that the use of partial transcripts "would not allow for a complete understanding of the issues presented at trial and later ruled upon."

¶ 55    C.A.R. 21 authorizes relief when "an appellate remedy would be inadequate, a party may suffer irreparable harm, or a petition raises an issue of first impression that has significant public importance." *People v. Howell*, 2024 CO 42, ¶ 5 (quoting *People v. Seymour*, 2023 CO 53, ¶ 16); *see also* C.A.R. 21(a)(1). We conclude that, because the issues that defendant wanted the supreme court to review in his potential C.A.R. 21 petition have now been resolved in this appeal or could have been raised in this appeal, defendant cannot make the required showing that an appellate remedy would be inadequate.

## G.    Perjured Testimony

¶ 56    Defendant asserts that the prosecution committed misconduct because it knew it was presenting perjured testimony from the anesthetist and from an investigator. Defendant did not raise this

issue at trial, so he did not preserve it. We conclude, for the following reasons, that there was no error, and, even if there were, any error was not plain. (The prosecution submits that, because defense counsel was present when these witnesses testified and did not object, defendant waived this issue. Based on the existing record, we cannot conclude that counsel was aware of the alleged perjury when it occurred or that counsel then made an intentional decision to remain silent instead of objecting. *See People v. Rediger*, 2018 CO 32, ¶ 39 (waiver is the intentional relinquishment of a known right).

¶ 57 A person commits perjury in the first degree if, in an official proceeding, the person "knowingly makes a materially false statement, which the person does not believe to be true, under an oath required or authorized by law." *People v. Schupper*, 140 P.3d 293, 296 (Colo. App. 2006); *see also* § 18–8–502(1), C.R.S. 2024. "It is fundamental that prosecutors may not present or allow perjured testimony." *People v. Medina*, 260 P.3d 42, 48 (Colo. App. 2010).

¶ 58 To establish that a prosecutor suborned perjury, "the defendant must show that (1) the prosecutor's case included perjured testimony; (2) the prosecutor knew or should have known

24

of the perjury; and (3) the perjury was material," meaning "there [wa]s any reasonable likelihood that the false statements could have affected the jury's judgment." *People v. Valera-Castillo*, 2021 COA 91, ¶ 42. The first two prongs of this test are "heavily fact dependent" and "normally cannot be resolved from a cold trial record." *Medina*, 260 P.3d at 48.

¶ 59 Defendant first contends that the prosecution suborned perjury by allowing the anesthetist to testify at trial that "he felt he could not call 911" despite the prosecutor's knowledge that the anesthetist had an independent duty to call 911. But the anesthetist did not testify that he had no duty to call 911 — he testified that he "felt" he could not call 911. And we cannot determine from the cold record before us whether the anesthetist perjured himself when he made this comment and, if so, whether the prosecution knew or should have known of the perjury. *See id.*

¶ 60 Next, defendant submits that the prosecution allowed the anesthetist to commit perjury by testifying that "as he understood it," his charges were dismissed because the prosecution felt "there [were not] grounds for charges" rather than in exchange for his testimony. In support of this submission, defendant points to the

25

prosecution's motion to dismiss the charges against the anesthetist, which reads:

> [The district attorney] respectfully moves the Court to dismiss COUNTS ONE and TWO in the above captioned case, and as grounds therefore states as follows:
>
> 1. Further prosecution of the above counts are no longer in the interests of justice because the prosecution has received additional evidence and interviews since the filing of the case. After consulting with one of their expert witnesses about the new information, the People do not believe they can proceed on either charge as they would be unable to prove one or more of the elements beyond a reasonable doubt.
>
> 2. Additionally, this defendant has proffered his testimony and has agreed to testify against the co-defendant . . . .

¶ 61    The statements in this motion are not sufficient to establish that the prosecution knowingly allowed the anesthetist to perjure himself. The motion does not state that his charges were dismissed in exchange for his testimony; it states that his charges were dismissed because the prosecution believed it could not prove the charges beyond a reasonable doubt. Consistently with what we hold above, we conclude that defendant has not made the requisite

26

showing that the anesthetist perjured himself when he made this comment. *See id.*

¶ 62 Finally, defendant contends that the prosecutor allowed an investigator to knowingly perjure herself when she testified incorrectly that the prosecution had charged the anesthetist only with reckless manslaughter rather than with criminally negligent homicide *and* with manslaughter. But defendant has not shown that the investigator did not believe this statement to be true. The investigator's testimony was not material because the jury knew, from the beginning of the trial, that defendant had been charged with criminally negligent homicide and because criminally negligent homicide is a lesser included offense of manslaughter. *People v. Medina*, 51 P.3d 1006, 1014 (Colo. App. 2001), *aff'd sub nom. Mata-Medina v. People*, 71 P.3d 973 (Colo. 2003).

## H. Misconduct in Closing Arguments

¶ 63 Defendant asserts that the prosecutor committed misconduct by making improper comments during closing argument. We conclude, for the following reasons, that there was no error, and, even if there were, it was not plain.

### 1. Applicable Law

¶ 64    We engage in a two-step analysis when reviewing claims of prosecutorial misconduct during closing arguments. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether, based on the totality of the circumstances, the prosecutor's behavior was improper. *Id.* Second, we determine whether the challenged actions warrant reversal under the proper standard of review. *Id.* In making these determinations, we may consider the language used, the context of the statements, the strength of the evidence, whether the prosecutor improperly appealed to the jurors' sentiments, whether the misconduct was repeated, and any other relevant factors. *Liebler*, ¶ 51.

### 2. Discussion

¶ 65    Although defendant cites multiple alleged errors in the prosecutor's closing arguments, he did not contemporaneously object to any of them. We will therefore reverse only if any putative error was plain.

¶ 66    First, defendant submits that the prosecutor improperly vouched for the anesthetist's testimony when she made the following statements in closing argument:

28

> I want to talk to you a little bit about [the anesthetist's] credibility. He never tried to mislead any other medical professional. *He constantly and consistently offered the truth.* He took ownership of the medications that he provided, he made detailed records of everything that happened in the [operating room], and he only left [the victim's] side briefly one time several hours after that cardiac event.

(Emphasis added.)

¶ 67 It is indeed the law that prosecutors may not vouch for the credibility of witnesses by communicating their opinion "on the truth or falsity of [witness] testimony during closing argument." *Wilson v. People*, 743 P.2d 415, 419 (Colo. 1987). And it is also true that "the 'determination of the credibility of witnesses is solely within the province of the jury.'" *People v. Vanderpauye*, 2021 COA 121, ¶ 49 (quoting *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983)), *aff'd*, 2023 CO 42.

¶ 68 But, even if this comment were error, we conclude that it did not undermine the fundamental fairness of the trial to the point that it cast serious doubt on the conviction's reliability, *see Cardman*, ¶ 19; in other words, there was not a reasonable

29

possibility that this putative error contributed to the conviction, *see id.* at ¶ 39.

¶ 69    The prosecutor did not repeat the comment or unduly emphasize it. *See People v. McBride*, 228 P.3d 216, 225 (Colo. App. 2009)(finding reversible error where the prosecutor's "plainly improper arguments" were "pervasive"). Defense counsel cross-examined the anesthetist at length. And the trial court instructed the jury that counsels' arguments were not evidence.

¶ 70    Second, defendant asserts that the prosecutor improperly expressed personal opinions and impermissibly vouched for the credibility of the prosecution's expert, as compared to the defense's expert, when she said:

> So let's talk about the [d]efense expert. Now, this is true of all the experts, and we talked about this at jury selection. You guys get to decide what to use or disregard of every expert.
>
> Well, first of all, compare the fees in this case. You heard the [d]efense expert did 20 to 40 hours at $400 an hour, $16,000. Now, I'm not saying he — that colored his — his testimony or he wasn't being honest, but that's going to have an effect on anyone when you're considering what their motives are and their biases and what things they're going to talk about.

30

¶ 71    We conclude that this comment was not error, let alone plain error.  Although prosecutors cannot communicate their opinions on the truth or falsity of witness testimony during closing argument, they are free to "point to circumstances that raise questions or cast doubt on a witness' testimony and draw reasonable inferences from the evidence as to the credibility of witnesses."  *Liebler*, ¶ 58.  With this particular argument, the prosecutor did just that.  But she also clarified that "[the jury] get[s] to decide what to use or disregard of every expert," and that she "[was] not saying that [the fee] colored . . . his testimony or [that] he wasn't being honest." *Compare McBride*, 228 P.3d at 223 (prosecutor's remarks framing expert as "hired gun" who was "full of it" and who, in return for fee, "made up" testimony that was "garbage" necessitated reversal), *with People v. Rhea*, 2014 COA 60, ¶ 71 (prosecutor's references to an expert as a "hired gun" and "professional witness" did not necessitate reversal as they were "much less flagrant" and "brief and isolated")(citation omitted).

¶ 72    Third, defendant suggests that the prosecution relied on a legal opinion from a medical expert that the court had ruled inadmissible.  During the medical expert's testimony, the expert

31

said that the anesthetist "shouldn't be charged with a crime" because "his conduct was not medically reckless or medically knowing or medically purposeful." Defense counsel objected, and the court instructed the jury that they should disregard the expert's testimony about whether the anesthetist had committed any crimes, but it could consider his opinion that the anesthetist had not been medically reckless or purposeful.

¶ 73    In closing argument, the prosecutor said:

> And you did hear some testimony about how [the anesthetist] was originally charged and his cases were, ultimately, dismissed. But you also heard from [the medical expert] exactly why that was.

¶ 74    This argument may have been somewhat ambiguous because it left open the possibility that it was referring to the expert's legal opinion. But the prosecutor did not expressly refer to the expert's legal opinion, and any reference to the expert's medical opinion was fair game. The court had instructed the jury not to consider the expert's legal opinion, so it is reasonable to believe that the jury would consider the prosecutor's argument as referring to the expert's medical opinion. And, to the extent that the jury may have understood this argument to refer to the expert's legal opinion, such

a reference was not overt and was not repeated or emphasized, and thus, there is not a reasonable possibility that this error contributed to defendant's convictions. *See Cardman*, ¶ 39.

¶ 75 Fourth, defendant contends that the prosecutor improperly implied there were facts that were not in the evidence by arguing that defendant "tried to bury the evidence" and that defendant "delayed [the] possibility" of "go[ing] back in time" to know "exactly what happened." But "[f]inal argument may properly include the facts in evidence *and any reasonable inferences drawn therefrom.*" *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005)(emphasis added).

¶ 76 The prosecutor's argument referred to such reasonable inferences based on the following evidence in the record. For example, the prosecution presented evidence that defendant delayed getting emergency care for the victim and that, during the six-hour delay, he consistently informed the victim's mother that the victim was "fine," even though he knew that she was not.

¶ 77 Fifth, we disagree with defendant that the prosecutor misstated the law by arguing that, although the prosecution's medical expert could not say whether defendant was responsible for

33

the victim's death, the expert's testimony did not "rule that out as a possibility." Then the prosecutor said: "You folks get to decide that, not any of the doctors who testified, not any of the witnesses. It is your prerogative, as the finders of fact, to decide if . . . [d]efendant is solely responsible." As we noted before, "the 'determination of the credibility of witnesses is solely within the province of the jury,'" *Vanderpauye*, ¶ 49 (citation omitted), so this comment, focusing the jurors on their role as fact finders, was not misconduct.

¶ 78     Sixth, defendant asserts that the prosecutor, at various times, "inappropriately encourage[d] [the] jury to decide the case based on emotion rather than on a rational assessment of the evidence." We decline to consider this contention because defendant does not develop it with sufficient legal analysis. *See People v. Wallin*, 167 P.3d 183, 187 (Colo. App. 2007)(declining to consider conclusory issues).

### I.     Insufficient Evidence to Support the Conviction for Obstruction of Telephone Service

¶ 79     Defendant submits that there was insufficient evidence to sustain his conviction for obstruction of telephone service contrary

to section 18-9-306.5(1).  We disagree, and we conclude that the evidence was sufficient.

¶ 80     When a defendant makes a sufficiency challenge, we review the record de novo "to determine whether the evidence presented is sufficient both in quantity and quality."  *Thomas v. People*, 2021 CO 84, ¶ 10.  In doing so, we consider "whether the evidence, 'viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'"  *People v. Harrison*, 2020 CO 57, ¶ 32 (citation omitted).  We must "give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence."  *Perez*, ¶ 25 (citation omitted).

¶ 81     A person commits obstruction of telephone service if he "knowingly prevents, obstructs, or delays, by any means whatsoever, the sending, transmission, conveyance, or delivery in this state of any message, communication, or report by or through . . . any telephone line."  § 18-9-306.5(1).  "Obstruct" means "[t]o make difficult or impossible; to keep from happening; [or to] hinder."  Black's Law Dictionary 1246 (12th ed. 2024).

¶ 82    At trial, the prosecution presented evidence that defendant, as the chief executive officer of the surgical center, was at the top of the organizational chart and in charge of the operating room.  Both the anesthetist and the nurse testified that they or other members of the surgical staff made multiple requests of defendant to call 911 during the six hours that the victim lay unconscious in the center. He either ignored or rejected them.  The anesthetist testified that, because defendant was in charge, he did not feel he could "override" defendant's decisions.

¶ 83    Evaluating this evidence in the light most favorable to the prosecution and giving the prosecution the benefit of every reasonable inference which might be drawn from it, we conclude that there was sufficient evidence for a jury to find that defendant violated section 18-9-306.5(1) because he prevented his staff from calling 911 to obtain emergency care for the victim.

¶ 84    The judgment is affirmed.

JUDGE GROVE and JUDGE PAWAR concur.